*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0199p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

ELIAS ALEXANDER UMAÑA-RAMOS,
                              *Petitioner*,

          *v.*                                                    No. 12-4274

ERIC H. HOLDER, JR., Attorney General,
                              *Respondent*.

On Petition for Review of an Order of the
Board of Immigration Appeals.
No. A087 531 642—Memphis.

Decided and Filed:  July 30, 2013

Before:  MOORE, KETHLEDGE, and STRANCH, Circuit Judges.

_____

**COUNSEL**

_____

**ON BRIEF:** Roy Petty, LAW OFFICES OF ROY PETTY, Rogers, Arkansas, for
Petitioner.  Kevin J. Conway, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C., for Respondent.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  Petitioner Elias Umaña-Ramos
("Umaña-Ramos") seeks asylum and withholding of removal, claiming that if he is
forced to return to El Salvador, he will be persecuted because of his prior resistance to
the recruitment efforts of the Mara Salvatrucha ("MS") gang.  Both the Immigration
Judge ("IJ") and the Board of Immigration Appeals ("BIA") found that Umaña-Ramos
was not eligible for asylum or withholding of removal, because he had not established
membership in a particular social group protected under the Immigration and Nationality
Act ("INA").  The BIA agreed with the IJ that young Salvadoran males who refuse

1

recruitment by the MS gang do not constitute a cognizable particular social group under the INA because the group was not sufficiently particular or socially visible. We agree, and also make clear that the social visibility of a particular social group refers to whether those with the relevant shared characteristic are perceived as a group by society, rather than whether the group's individual members are visually recognizable "on-sight." Accordingly, we **DENY** Umaña-Ramos's petition for review.

## I.  BACKGROUND

Umaña-Ramos, a citizen of El Salvador, entered the United States without inspection or authorization on October 9, 2009, at the age of fourteen. Administrative Record ("A.R.") at 316 (Resp.'s Pleading and Mot. for Change of Venue at 2). After he was apprehended and subsequently released into the custody of his mother, the Department of Homeland Security filed a Notice to Appear alleging that Umaña-Ramos was removable for being "an alien present in the United States without being admitted or paroled." *Id*. at 337 (Notice to Appear) (quoting 8 U.S.C. § 1182(a)(6)(A)(i)). Umaña-Ramos admitted the factual allegations in the Notice to Appear and conceded that he was removable, but sought asylum and withholding of removal. *See Id*. at 316 (Resp.'s Pleading and Mot. for Change of Venue at 2); *id*. at 301–13 (App. for Asylum).

At a hearing before the IJ, Umaña-Ramos testified that members of the MS gang began attempting to recruit him when he was eleven years old. Umaña-Ramos explained that MS members approached him approximately ten times about joining the gang, and they threatened to beat him if he refused to join. *Id*. at 133–34 (Hr'g Tr. at 60–61). Although Umaña-Ramos refused to join the gang, he was never beaten or otherwise harmed by gang members. *Id*. at 134 (Hr'g Tr. at 61). Umaña-Ramos stated on cross-examination that he had friends who refused recruitment by the MS gang who similarly were not physically harmed by gang members. *Id*. at 139 (Hr'g Tr. at 66).

When Umaña-Ramos was fourteen years old, his neighbor, a nine-year-old boy, was murdered by an MS gang member for stealing mangos from the gang member's property. *Id*. at 135–36 (Hr'g Tr. at 62–63). The MS member was arrested for the

murder, but served only about one month in jail. *Id.* As a result of his fears of gang violence, Umaña-Ramos fled El Salvador. Although at the hearing he could not identify a reason why the MS gang would single him out for harm, he is afraid that the gang members will kill him if he returns to El Salvador. *See id.* at 141–42 (Hr'g Tr. at 68–69).

Umaña-Ramos argued before the IJ that he was eligible for asylum because he had a well-founded fear of future persecution if removed to El Salvador on account of his membership in a particular social group, namely the group of "young Salvadoran men who have refused to join the Maras." *Id.* at 157 (Hr'g Tr. at 84). The IJ found Umaña-Ramos credible, but nonetheless denied his claims for asylum and withholding of removal. *Id.* at 27 (IJ Dec. at 16). The IJ found that Umaña-Ramos had not suffered any past persecution, because although he was threatened, he "was not tortured, was not beaten and was not otherwise deprived in any manner that would suggest that he has suffered past persecution in any[]way." *Id.* The IJ also found that while Umaña-Ramos "testified credibly that he is fearful" of returning to El Salvador, he failed to "define[] a particular social group with sufficient particularity or social visibility to constitute a particular social group under Sixth Circuit law." *Id.* at 29, 30 (IJ Dec. at 18, 19). Because Umaña-Ramos failed to demonstrate a well-founded fear of future persecution on account of his membership in a particular social group, the IJ concluded that he was not eligible for asylum. Additionally, the IJ found that because Umaña-Ramos failed to establish eligibility for asylum, he could not meet the stricter standard required for withholding of removal. As a result, the IJ ordered that Umaña-Ramos be removed to El Salvador. *Id.* at 31 (IJ Dec. at 20).

The BIA agreed with the IJ that Umaña-Ramos had "not established that his purported social group 'young Salvadoran males who refused recruitment by Maras' is cognizable under the [INA]." *Id.* at 3 (BIA Op. at 1). The BIA found that "to the extent that [Umaña-Ramos] asserts that former resistance to gang recruitment qualifies as a particular social group, he has not established how his proposed group meets the social visibility or particularity requirements." *Id.* at 4 (BIA Op. at 2). The BIA therefore

concluded that Umaña-Ramos failed to demonstrate that the risk of future persecution he faced was on account of his membership in a particular social group, thus precluding eligibility for asylum and withholding of removal. The BIA then dismissed Umaña-Ramos's appeal, leaving in place the IJ's order that he be removed to El Salvador. Umaña-Ramos timely filed the instant petition for review.

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

In general, we have jurisdiction to review final orders of removal of the BIA. *See Calcano-Martinez v. INS*, 533 U.S. 348, 350 (2001) (citing 8 U.S.C. § 1252(a)(1)). "Where, as here, the BIA issued a separate opinion, rather than summarily affirming the IJ's decision, we 'review the BIA's decision as the final agency determination. To the extent the BIA adopted the immigration judge's reasoning, however, [we] also review[] the immigration judge's decision.'" *Hachem v. Holder*, 656 F.3d 430, 437 (6th Cir. 2011) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). We review de novo questions of law and give "substantial deference . . . to the BIA's interpretation of the INA and accompanying regulations." *Khalili*, 557 F.3d at 435. The BIA's interpretation of the INA "will be upheld unless the interpretation is arbitrary, capricious, or manifestly contrary to the statute." *Id.* (internal quotation marks omitted). The IJ's and BIA's findings of fact are reviewed using the substantial-evidence standard. *Liti v. Gonzales*, 411 F.3d 631, 636 (6th Cir. 2005). Moreover, Congress has specified that "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### B. Analysis

Under the INA, the Attorney General has discretion to grant asylum to applicants who meet the definition of a "refugee." 8 U.S.C. § 1158(b). The INA defines "refugee" as "a person who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-*

*Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)). General conditions of rampant gang violence alone are insufficient to support a claim for asylum. *See Gomez-Romero v. Holder*, 475 F. App'x 621, 625 (6th Cir. 2012). Instead, "the context must indicate that the asylum applicant is targeted for abuse based on his membership in a protected category." *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007). In this case, Umaña-Ramos claims that he is eligible for asylum on the basis of his membership in a particular social group. Because Umaña-Ramos's application for asylum was filed after May 2005, it is also governed by the REAL ID Act, *see Bonilla-Morales*, 607 F.3d at 1136, under which Umaña-Ramos must show that his membership in a particular social group "was or will be at least one central reason for persecuting" him. 8 U.S.C. § 1158(b)(1)(B)(i). The applicant bears the burden of proof to establish that he meets the definition of a refugee. *See Bonilla-Morales*, 607 F.3d at 1136.

Because the INA's definition of a refugee hinges on persecution "on account of" a protected category, we must first determine whether Umaña-Ramos "is in fact a member of a 'particular social group' for purposes of the statute." *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003), *modified on other grounds by Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). In deference to the judgment of the BIA, we have defined a particular social group as a group "composed of individuals who share a 'common, immutable characteristic.'" *Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010) (quoting *Castellano-Chacon*, 341 F.3d at 546). The group's shared characteristic "'must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" *Castellano-Chacon*, 341 F.3d at 547 (quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)). In addition, "a social group may not be circularly defined by the fact that it suffers persecution. The individuals in the group must share a narrowing characteristic other than their risk of being persecuted." *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005).

Finally, following the BIA, we have held that "[a]n alleged social group must be both particular and socially visible." *Bonilla-Morales*, 607 F.3d at 1137. Particularity refers to "'whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons.'" *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009) (quoting *In re S-E-G-*, 24 I. & N. Dec. 579, 584 (BIA 2008)). Social visibility "requires 'that the shared characteristic of the group should generally be recognizable by others in the community.'" *Id.* (quoting *In re S-E-G-*, 24 I. & N. Dec. at 586). In other words, social visibility requires that the set of individuals with the shared characteristic be "perceived as a group by society." *In re S-E-G-*, 24 I. & N. Dec. at 586 (internal quotation marks omitted).

Umaña-Ramos urges us to reject the BIA's addition of social visibility and particularity as requirements for cognizable particular social groups under the INA. First, our holding in *Bonilla-Morales* disposes of Umaña-Ramos's suggestion that this court has not already adopted the social-visibility and particularity requirements. *See Bonilla-Morales*, 607 F.3d at 1137; *see also Kante v. Holder*, 634 F.3d 321, 327 (6th Cir. 2011) (including social visibility and particularity in the definition of particular social group); *Al-Ghorbani*, 585 F.3d at 994 (same). The BIA's definition of "particular social group" warrants deference, *see Castellano-Chacon*, 341 F.3d at 546, and thus "[w]e defer to the *reasonable* boundaries that the Board creates with respect to the phrase." *Solis-Gonzales v. Holder*, No. 12-4116, 2013 WL 2987005, at *1 (6th Cir. June 18, 2013) (emphasis added); *see also Castro-Paz v. Holder*, 375 F. App'x 586, 590 (6th Cir. 2010) (holding that the BIA's addition of particularity and social visibility to the definition of a particular social group was a "reasonable" construction of the INA and was "entitled to deference").

Second, Umaña-Ramos's argument that the social-visibility criterion should not apply in this court is unpersuasive, because it relies on a mistaken interpretation of what "social visibility" means. Umaña-Ramos suggests that the social-visibility criterion requires him to demonstrate that "he would be immediately recognized as one who had

refused to join the MS gang" upon returning to El Salvador. Pet. Br. at 16. Umaña-Ramos contends that social visibility requires that individual members of a particular social group be visually recognizable as part of the group by others in the community. We refer to this meaning of social visibility as "on-sight visibility." Our prior decisions, however, have not applied the social-visibility criterion in a way that requires on-sight visibility. Instead, we interpret our precedents as using social visibility to refer to the social salience of the group in a society, or in other words, whether the set of individuals with the shared characteristic would be perceived as a group by society—*not* whether a group's individual members are recognizable "on-sight" by others in the community. For example, in *Kante*, we applied the social-visibility criterion by asking whether "the Guinean society viewed females as a group specifically targeted for mistreatment." 634 F.3d at 327; *see also Castro-Paz*, 375 F. App'x at 590 (holding that a group lacked social visibility because there was "no evidence that former bank employees are identifiable in society"). Our interpretation of the social-visibility requirement is in accord with that of the First, Ninth, and Tenth Circuits. *See Mendez-Barrera v. Holder*, 602 F.3d 21, 27 (1st Cir. 2010) ("The relevant inquiry is whether the social group is visible in the society, not whether the alien herself is visible to the alleged persecutors."); *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1087–88 (9th Cir. 2013) (en banc) (rejecting on-sight visibility requirement); *Rivera-Barrientos v. Holder*, 666 F.3d 641, 652 (10th Cir. 2012) (holding that "social visibility cannot be read literally"). The Second and Fifth Circuits similarly have at least impliedly adopted this interpretation. *See Koudriachova v. Gonzales*, 490 F.3d 255, 261 (2d Cir. 2007) (explaining that the social-visibility criterion refers to "the extent to which members of society perceive those with the relevant characteristic as members of a social group," and stating that former members of the police force—a group with no on-sight visibility—could constitute a particular social group); *Orellana-Monson v. Holder*, 685 F.3d 511, 522 (5th Cir. 2012) (interpreting the social-visibility criterion as asking whether "people who were recruited to join gangs but refused to do so would be 'perceived as a group' by society").

Although we acknowledge that there are some BIA opinions that equivocate between the two possible meanings of social visibility,[1] "an 'on-sight' visibility requirement would not make sense" given the BIA's explanation of the social-visibility requirement in several of its key precedential opinions. *Henriquez-Rivas*, 707 F.3d at 1088. In *Matter of S-E-G-*, the BIA held that "young Salvadorans who have been subject to recruitment efforts by criminal gangs, but who have refused to join" do not qualify as a particular social group. 24 I. & N. Dec. at 588. The BIA explained that "[t]here is little in the background evidence of record to indicate that Salvadoran youth who are recruited by gangs but refuse to join . . . would be 'perceived as a group' by society, or that these individuals suffer from a higher incidence of crime than the rest of the population." *Id.* at 587. Similarly, when holding that wealthy Guatemalans were not a particular social group, the BIA explained that the group lacked social visibility because there was no evidence that those with the shared characteristic "would be recognized as a group that is at a greater risk of crime in general or of extortion or robbery in particular." *In re A-M-E & J-G-U-*, 24 I. & N. Dec. 69, 74 (BIA 2007). In *Matter of C-A-*, the BIA explained that former land ownership, opposition to female genital mutilation, and former membership in a national police force were "highly visible" characteristics. 23 I. & N. Dec. 951, 960 (BIA 2006). "If opposition to genital mutilation, kinship ties, and prior employment as a police officer are socially visible, social visibility cannot be read literally." *Rivera-Barrientos*, 666 F.3d at 652.

The Third and Seventh Circuits have reached the same outcome, refusing to include on-sight visibility as a requirement for a particular social group, but have done so on different legal grounds. *See Valdiviezo-Galdamez v. Holder*, 663 F.3d 582, 608 (3d Cir. 2011); *Gatimi v. Holder*, 578 F.3d 611, 615 (7th Cir. 2009) (Posner, J.). These courts interpreted certain past BIA decisions as endorsing the requirement of on-sight

---

[1]For example, the government in the past has taken the position "that you can be a member of a particular social group only if a complete stranger could identify you as a member if he encountered you in the street, because of your appearance, gait, speech pattern, behavior, or other discernible characteristic." *Benitez Ramos v. Holder*, 589 F.3d 426, 430 (7th Cir. 2009); *see generally* Brian Soucek, Comment, *Social Group Asylum Claims: A Second Look at the New Visibility Requirement*, 29 Yale L. & Pol'y Rev. 337 (2010) (discussing the BIA's social-visibility requirement and explaining that some BIA decisions have interpreted the requirement in its literal sense).

visibility, and as a result rejected the social-visibility requirement as inconsistent with prior BIA precedent as well as an arbitrary interpretation of the INA. *See Gatimi*, 578 F.3d at 615 (stating that the on-sight interpretation of the social-visibility requirement "makes no sense" and "cannot be squared" with earlier precedent); *Valdiviezo-Galdamez*, 663 F.3d at 607. We do not understand the BIA or the government to be arguing in favor of a requirement of on-sight visibility in this case, and we note that the Solicitor General recently represented to the Supreme Court that the government does not interpret the social-visibility requirement as one of on-sight visibility. *See* Brief for Respondent in Opposition, *Contreras-Martinez v. Holder*, 130 S. Ct. 3274 (2010) (No. 09-830) (denying cert.), 2010 WL 1513110, at *13. Nonetheless, if the BIA did conclude that an asylum applicant was required to demonstrate the on-sight visibility of the members of his particular social group, we would agree with the courts that have held that such a requirement "would be inconsistent with previous BIA decisions and likely impermissible under the statute." *Henriquez-Rivas*, 707 F.3d at 1087.

In sum, we hold that the social-visibility requirement refers to whether the individuals with the shared characteristic are perceived as a group in the society at issue, not whether individual members are visually recognizable as members of that group. We join our sister circuits that have held that there is no on-sight visibility requirement for a particular social group to be cognizable under the INA.

Applying these standards, we conclude that Umaña-Ramos's proposed particular social group of "young Salvadorans who ha[ve] been threatened because they refused to join the MS gang" is not cognizable under the INA. Pet. Br. at 10. Umaña-Ramos's proposed group does not meet the particularity and social-visibility requirements: the group is too broad, because it could include all Salvadoran youth who are not members of the MS gang. *See Escobar-Batres v. Holder*, 385 F. App'x 445, 447 (6th Cir. 2010) (rejecting as too broad the proposed group of Salvadoran teenage girls targeted for recruitment by the Maras, because "it consists of any female teenage citizen who refuses to join the *Maras* and could include all Salvadoran teenage girls who are currently not in the *Maras*"). The group thus does not have sufficient particularity, because it cannot

"accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Al-Ghorbani*, 585 F.3d at 994 (internal quotation marks omitted); *see Rreshpja*, 420 F.3d at 555 (rejecting young, attractive Albanian women forced into prostitution as a particular social group as too "generalized" and "sweeping").

Umaña-Ramos's proposed group also is not sufficiently socially visible. There is no evidence in the record suggesting that the group of youths whom the MS gang threatens because of their refusal to join is perceived as a distinct segment of the Salvadoran population. "[G]ang violence and crime in El Salvador appear to be widespread, and the risk of harm is not limited to young males who have resisted recruitment . . . but affects all segments of the population." *In re S-E-G-*, 24 I. & N. Dec. at 587. The violence that Umaña-Ramos fears does not appear to be connected with his refusal to join the gang: the only violent episode Umaña-Ramos testified about was connected with another's theft of property, not refused gang recruitment. Umaña-Ramos has not established that he is more likely than other citizens in El Salvador to be subject to the violence of the country's criminal gangs. Accordingly, we agree with the other courts that have addressed this issue and hold that young Salvadorans who have refused recruitment by the MS gang do not form a cognizable particular social group. *See, e.g.*, *Gaitan v. Holder*, 671 F.3d 678, 682 (8th Cir. 2012); *Orellana-Monson*, 685 F.3d at 522; *see also Zelaya v. Holder*, 668 F.3d 159, 167 (4th Cir. 2012) (refused recruitment by Honduran gangs); *Ramos-Lopez v. Holder*, 563 F.3d 855, 862 (9th Cir. 2009) (same). Because Umaña-Ramos has failed to demonstrate his membership in a cognizable particular social group, his asylum claim fails.

Umaña-Ramos's claim for withholding of removal similarly fails. "[A]n applicant seeking withholding of removal faces 'a more stringent burden than what is required on a claim for asylum.'" *Urbina-Mejia*, 597 F.3d at 365 (quoting *Liti*, 411 F.3d at 640). The applicant must show "that there is a clear probability that he will be subject to persecution if forced to return to the country of removal," *Khalili*, 557 F.3d at 436 (internal quotation marks omitted), and that the persecution would be "'on account of

race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* at 435 (quoting 8 U.S.C. § 1231(b)(3)(A)).  Like eligibility for asylum, eligibility for withholding of removal requires that the risk of persecution be on account of a statutorily protected ground.  *See Al-Ghorbani*, 585 F.3d at 997.  Because Umaña-Ramos has not demonstrated that he belongs to a statutorily protected particular social group, the BIA properly denied his claim for withholding of removal.

## III.  CONCLUSION

For the foregoing reasons, we **DENY** Umaña-Ramos's petition for review.