NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0292n.06

No. 16-4041

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| YOLANDA SANCHEZ-OCHOA, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| JEFFERSON B. SESSIONS, III, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |

**FILED**
May 24, 2017
DEBORAH S. HUNT, Clerk

Before: DAUGHTREY, KETHLEDGE, and STRANCH, Circuit Judges.

KETHLEDGE, Circuit Judge.    Yolanda Sanchez-Ochoa, Jose Perez-Murillo, and their son Hector Perez-Sanchez—all Mexican citizens—petition for review of a final order of removal issued by the Board of Immigration Appeals. Specifically, they challenge the Board's refusal to grant them asylum, withholding of removal, and protection under the Convention Against Torture. We deny the petition for review.

In 2012, the petitioners entered the United States using border-crossing cards, which allow Mexican citizens to visit the United States for a few days at a time. The family did not plan on returning home to Juarez, Mexico. Instead, they settled in Ohio, where Jose began working as a waiter. A few months later, he was caught selling alcohol to an underage customer and pleaded guilty to disorderly conduct. Immigrations and Customs Enforcement began deportation proceedings against him. Yolanda thereafter filed an application for asylum, withholding of removal, and protection under the Convention Against Torture for herself, Jose, and their son.

An immigration judge held a hearing on that application. Jose testified that he was worried about returning to Mexico because he believed that a drug cartel was targeting him for extortion. According to Jose, before the family left Juarez, unidentified men had threatened to kill him if he did not hand over his truck and 20,000 pesos. Jose said that the threats had continued even after the family fled to the United States: about a year after they left, one of their Juarez neighbors told Jose that men in a black truck had come looking for the family. Jose took these threats seriously, because he knew that other neighbors had been beaten or murdered after refusing to comply with extortionists' demands. He believed that a drug cartel was orchestrating all the extortion attempts, threats, and attacks. The immigration judge found that Jose was credible, but denied the family's application. The Board of Immigration Appeals affirmed. Thereafter, the petitioners filed this petition for review.

We review the Board's factual findings for substantial evidence, and its legal conclusions de novo. *Marikasi v. Lynch*, 840 F.3d 281, 286 (6th Cir. 2016). To prove eligibility for asylum, applicants must show that they are "refugees" under the Immigration and Nationality Act. *Id.* at 287; *see* 8 U.S.C. § 1158(b)(1)(A). The definition of refugee includes persons who have a "well-founded fear" that, if they returned to their home country, they would be persecuted "on account of . . . [their] membership in a particular social group[.]" 8 U.S.C. § 1101(a)(42). To qualify as a particular social group, the alleged group must be, among other things, distinct enough "that the community would recognize it as a discrete class of persons." *Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015).

Jose and his family argue that, if they returned to Mexico, they would be persecuted because they belong to a particular social group—one that, they say, encompasses all persons "in Mexico who are not associated with either a cartel or the Mexican government." But that group

is not distinct enough to qualify as a particular social group under 8 U.S.C. § 1101(a)(42). In *Umana-Ramos v. Holder*, an asylum applicant argued that he belonged to a group of "young Salvadorans who [had] been threatened because they refused to join" a specific gang. *See* 724 F.3d 667, 673-74 (6th Cir. 2013). The court held that the group was not particular enough, "because it could include all Salvadoran youth who are not members" of the gang. *Id.* Here, the petitioners' alleged group appears even broader; it includes all people in Mexico who are neither cartel members nor government employees. Although the petitioners might have well-founded fears about returning to Mexico, we may not grant them asylum on the basis of a "country-wide risk of victimization" through extortion. *Lopez-Castro v. Holder*, 577 F.3d 49, 54-55 (1st Cir. 2009); *cf. Koliada v. I.N.S.*, 259 F.3d 482, 488 (6th Cir. 2001). Thus, the petitioners' alleged social group "does not have sufficient particularity" to satisfy the Act, and their asylum claim fails. *Umana-Ramos*, 724 F.3d at 674. The petitioners' claim for withholding of removal fails for the same reason. *Id.*; *see* 8 U.S.C. § 1231(b)(3)(A).

The petitioners also argue that they are entitled to protection under the Convention Against Torture. To succeed on this claim, they must show that, "more likely than not," they would be tortured if removed to Mexico. *Menijar*, 812 F.3d at 501 (citation omitted). Torture includes severe pain and suffering inflicted by government officials, or inflicted by other persons with the encouragement, consent, or acquiescence of government officials. *Id.*

The Board rejected the petitioners' claim under the Convention because they had not proven that the Mexican government would acquiesce in (or be willfully blind to) a private person torturing the petitioners. The Board's conclusion was based on substantial evidence. Jose admitted that he never called the police to seek their help. And the petitioners presented no proof that the police were involved in the threats against them or in the attacks on their

neighbors.  Instead, the petitioners rely on Jose's belief that the Juarez police are "the same as the cartels" and thus would not protect him.  The petitioners also emphasize that the United States Department of State, in a countrywide report on human rights abuses in Mexico, concluded that the Mexican police and military had been involved in "serious abuses, including unlawful killings, physical abuse, torture, and disappearances."  But neither Jose's belief nor a general countrywide report on police abuses proves that the Juarez police—or any other police department in Mexico—would be more likely than not to acquiesce in cartel members torturing the petitioners. *See Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010).  Thus, the Board reasonably concluded that the petitioners are not entitled to protection under the Convention Against Torture.

In sum, we do not discount the dangers this family might face upon their return to Mexico.  But those dangers are faced by many people in Mexico; and in any event we have no lawful basis to set aside the decision of Board.  The petition for review is therefore denied.