NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Case No. 17-4050

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 04, 2018
DEBORAH S. HUNT, Clerk

JUANA JUAN-MATEO, et al.                          )
                                                  )
    Petitioners,                          )          ON PETITION FOR REVIEW
                                                  )          FROM THE UNITED STATES
v.                                                )          BOARD OF IMMIGRATION
                                                  )          APPEALS
JEFFERSON B. SESSIONS, III, Attorney              )
General,                                          )
                                                  )                O P I N I O N
    Respondent.                           )


BEFORE:  SUTTON, McKEAGUE, and DONALD, Circuit Judges.

**McKEAGUE, Circuit Judge.**  Many who seek asylum in the United States face genuine dangers in their native countries, and understandably worry over the safety of themselves and their families should they have to return there.  We have no doubt that Juana Juan-Mateo and her minor son might find safer harbor in the United States than in Guatemala.  But if they were granted asylum under these circumstances, their proposed social groups—"women who oppose gangs" and "Guatemalans afraid of kidnapping"—would encompass nearly "all segments of the population" in their native country.  *Umana-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (citation and quotation marks omitted).  Because the Immigration and Nationality Act does not cast such a broad net, we cannot disturb the Board of Immigration Appeals' decision.  We **DENY** Juan-Mateo's petition.

**I**

For decades, Juana Juan-Mateo lived in her native country, Guatemala.  In 2003 or 2004, Juan-Mateo entered the United States, apparently without lawful permission.  She returned to her home country in 2010 after hearing that her mother had passed away.  On June 30, 2014, Juan-Mateo again entered the United States unlawfully.  She testified that she returned to the United States out of fear over violent conditions in Guatemala, and in order to be reunited with her husband, who also apparently lacks legal status here.  She brought her minor son along for the journey; her four daughters remained behind in Guatemala.

This time, Juan-Mateo and her son were apprehended near the border.  The Department of Homeland Security served notices to appear on both, charging each as removable for being an alien without lawful status in violation of the immigration laws of the United States of America.  In October 2014, Juan-Mateo appeared with counsel before an immigration judge.  The immigration judge sustained the charges in the notices.

Juan-Mateo then filed an application seeking asylum and withholding of removal.  At its heart, her application claimed that she feared harm from gang members in Guatemala.

The immigration judge held a hearing regarding the application in December 2016.  Juan-Mateo was the only witness, and her testimony offered several puzzle pieces.  As for the danger she allegedly faced in Guatemala, she testified to many criminal incidents. She stated that thugs attempted to rob her father-in-law and cut his hand when he did not have anything of value to give them; that she was once followed by men who she believed were attempting to rob her; that she received a phone call from an unknown man asking for money; that a man took pictures of her daughter, apparently in preparation to kidnap her; that her house was approached by men wearing masks who she believed to be gang members; that her brother was assaulted by gang members and

another went missing decades ago; that her eldest son was followed by gang members; and that all of these unnerving incidents left her afraid to return because she believes gang members will either kidnap or rob her for money, and no safe harbor exists in Guatemala.

Nevertheless, Juan-Mateo's father-in-law, daughter, and brother, remain in Guatemala—all were apparently unharmed in the two years preceding Juan-Mateo's application. The unknown men never followed or called Juan-Mateo again; and Juan-Mateo has never been harmed in Guatemala. And, at bottom, she testified that she came to the United States to be with her husband. So, while the immigration judge found her testimony credible and acknowledged that these incidents could cause some subjective fear, he denied her relief. The immigration judge found that Juan-Mateo's fear was not objectively reasonable; that she had not herself experienced past persecution; that none of the incidents that she described regarding her or her family members' experiences were severe enough to constitute persecution; that no "nexus" existed between her fear of harm and a protected ground; and that she had not shown that relocation in Guatemala would be unreasonable.

The Board of Immigration Appeals (BIA) affirmed, but its decision rested on slightly different grounds. First, the BIA found "[t]he proposed social group of Guatemalans afraid of kidnapping for extortion attempts by gangs is not cognizable for purposes of asylum as it does not have the requisite particularity or social distinction necessary to constitute a particular social group." Second, the Board found that Juan-Mateo had not "met her burden to establish a well-founded fear of future persecution if she returns to Guatemala." Therefore, the Board held, she "demonstrated no nexus between any past or feared future persecution and a protected ground"—and "[i]nasmuch as [she] has not met her burden of showing a well-founded fear of persecution

3

required for asylum, it follows that she has also not satisfied the higher standard of a clear probability of persecution required for withholding of removal." This petition follows.

## II

In general, we have jurisdiction to review the BIA's final orders concerning removal. *See Calcano-Martinez v. I.N.S.*, 533 U.S. 348, 350 (2001) (citing 8 U.S.C. § 1252(a)(1)); *accord Umana-Ramos*, 724 F.3d at 670. "Where, as here, the BIA issued a separate opinion, rather than summarily affirming the [immigration judge's] decision, we 'review the BIA's decision as the final agency determination.'" *Hachem v. Holder*, 656 F.3d 430, 437 (6th Cir. 2011) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). We review legal conclusions de novo, *Umana-Ramos*, 724 F.3d at 670, and factual findings for substantial evidence, *Daneshvar v. Ashcroft*, 355 F.3d 615, 624 (6th Cir. 2004); *see* 8 U.S.C. § 1252(b)(4)(B).

## III

Under the Immigration and Nationality Act (INA), the Attorney General may grant asylum to an alien who meets the definition of a "refugee." 8 U.S.C. § 1158(b). The Act defines "refugee" as "a person who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)).

Relevant to this petition, "[a]n alleged social group must be both particular and socially visible." *Id.* at 1137. The particularity requirement looks to whether the proposed group constitutes "a discrete class of persons." *Umana-Ramos*, 724 F.3d at 671 (citation omitted). The social visibility requirement looks to whether the proposed group can "be perceived as a group by society." *Id.*

Though she testified that she entered the United States in part to be with her husband (leaving several children and other family members behind in Guatemala), Juan-Mateo also testified that she was motivated by fear of violence in Guatemala. She argues that she qualifies as a "refugee" because "she is a member of a [sic] particular social groups," *i.e.* "women who oppose gangs in Guatemala and Guatemalans afraid of kidnapping for extortion attempts."

Ultimately, Juan-Mateo fails to cite cases that demonstrate that either of these proposed "social groups" satisfies the particularity and social-visibility requirements under the INA. In *Umana-Ramos*, for example, we held that the petitioner's proposed social group—"young Salvadorans who ha[ve] been threatened because they refused to join the MS gang"—"is too broad, because it could include all Salvadoran youth who are not members of the MS gang." *Umana-Ramos*, 724 F.3d at 673–74. Moreover, as to social visibility, we noted that "gang violence and crime in El Salvador appear to be widespread, and the risk of harm is not limited to young males who have resisted recruitment . . . but affects all segments of the population." *Id.* (citation and quotation marks omitted). Because the petitioner "failed to demonstrate his membership in a cognizable particular social group, his asylum claim fail[ed]." *Id.*

Similarly, in *Escobar-Batres v. Holder*, we rejected the petitioner's proposed group— "Salvadoran teenage girl[s] . . . being targeted for recruitment by the *Maras*—because "it consists of any female teenage citizen who refuses to join the *Maras* and could include all Salvadoran teenage girls who are currently not in the *Maras*." 385 F. App'x 445, 447 (6th Cir. 2010).

Juan-Mateo does not explain how her proposed groups differ from these other groups that we have held failed to meet the particularity and social-visibility requirements. Indeed, in some ways the groups that Juan-Mateo proposes are even *broader* than those in *Umana-Ramos* and *Escobar-Batres*. *Compare, e.g.*, Appellants Br. at 8 (proposing a group of all women who oppose

gangs in Guatemala) *with Escobar-Batres*, 385 F.App'x at 447 (rejecting a proposed group of teenage girls who refuse to join a specific gang). To hold that nebulous groups such as "women who oppose gangs in Guatemala" and "Guatemalans afraid of kidnapping for extortion attempts" constitute "particular social groups" would be inconsistent with the INA. And the "risk of harm" associated with these groups potentially "affects all segments of the population" in Guatemala. *Umana-Ramos*, 724 F.3d at 674. Because the BIA properly declined to recognize Juan-Mateo's proposed groups, it also properly denied her claim for asylum.

"Like eligibility for asylum, eligibility for withholding of removal requires that the risk of persecution be on account of a statutorily protected ground." *Umana-Ramos*, 724 F.3d at 674 (citing *Al-Ghorbani v. Holder*, 585 F.3d 980, 997 (6th Cir. 2009)). Because Juan-Mateo does not belong to a protected social group, the BIA properly denied her claim for withholding of removal.

**IV**

Granting asylum to an alien is an "extraordinary act." *Lopez-Gomez v. Ashcroft*, 263 F.3d 442, 446 (5th Cir. 2001). Asylum cannot accommodate all who face difficult or dangerous conditions in their native countries. For the foregoing reasons, we **DENY** Juan-Mateo's petition for review.