NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0368n.06

No. 20-4087

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>MARTINA RODRIGUEZ-LOPEZ; INGRED GIMENA RODRIGUEZ-LOPEZ; WALTER DAVID AILON RODRIGUEZ,<br><br>    Petitioners,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>    Respondent.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>**FILED**<br>Jul 26, 2021<br>DEBORAH S. HUNT, Clerk<br><br>ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS</td></tr>
</table>

Before: GRIFFIN, LARSEN, and NALBANDIAN, Circuit Judges.

LARSEN, Circuit Judge. The Department of Homeland Security (DHS) initiated removal proceedings against Martina Rodriguez-Lopez and her two minor children after their illegal entry into the United States. Rodriguez-Lopez applied for asylum on behalf of herself and her minor children and withholding of removal and protection under the Convention Against Torture (CAT) for herself.[1] The immigration judge (IJ) and the Board of Immigration Appeals (BIA) denied relief and ordered Rodriguez-Lopez and her minor children removed to Guatemala. For the reasons stated, we DENY the petition for review.

I.

Rodriguez-Lopez, a native and citizen of Guatemala, illegally entered the United States with her minor daughter, Ingred, and was arrested by a Border Patrol agent in March 2015. DHS

---

[1] The minor children's applications for asylum are derivative of Rodriguez-Lopez's, so we do not address their cases separately.

issued Notices to Appear to Rodriguez-Lopez and her daughter and began removal proceedings. Rodriguez-Lopez conceded removability but applied for asylum on behalf of herself and Ingred and withholding of removal and protection under the CAT for herself. In 2016, Rodriguez-Lopez's minor son, Walter, applied for admission into the United States without a valid visa or other entry documents. DHS initiated removal proceedings against Walter and released him to the custody of Rodriguez-Lopez. Walter's case was consolidated with Rodriguez-Lopez's.

Rodriguez-Lopez testified before the IJ. She explained that she is an indigenous Guatemalan born in Aguacatan, Huehuetenango, Guatemala. She completed only one year of school and got married young. She had four children with her husband before he died in 2004. Sometime around 2005, she moved to a coastal village, Escuintla, and in 2007 or 2008, she met a man named Carlos Coijuck while working on a banana plantation there. She began a relationship with Carlos, and they had a child together.

Carlos is the reason Rodriguez-Lopez fears returning to Guatemala. Not long into the relationship, Carlos became physically abusive and threatened Rodriguez-Lopez and her children. The abuse and threats continued throughout the relationship. Rodriguez-Lopez tried to leave the home she was sharing with Carlos. For a few weeks, she lived in Guatemala City but left after not being able to find work. She lived with her mother in Aguacatan for two months. Although Carlos did not physically abuse her while she was at her mother's house, he did visit the house and call Rodriguez-Lopez, pleading for her to return to Escuintla and threatening to take the child they had together if she did not. Rodriguez-Lopez returned to Escuintla and lived at least part of the time with Carlos. He continued to abuse her, and because of his continued mistreatment of the children, Rodriguez-Lopez sent them to live with her mother. Eventually, Rodriguez-Lopez left for the

United States, after she was assaulted and gang raped by four masked men, one of whom she believed to be Carlos.

Although the IJ found Rodriguez-Lopez credible, she denied her applications for relief. The BIA affirmed. It determined that Rodriguez-Lopez had waived her CAT-protection claim. It denied her asylum and withholding of removal claims. While Rodriguez-Lopez had premised her claims on her membership in various alleged social groups, the BIA determined that she either had failed to establish membership in her social groups or that the social groups were not cognizable. The BIA also determined that Rodriguez-Lopez had failed to establish a nexus between the alleged harm and her race or proposed social groups. Rodriguez-Lopez now petitions for review of the BIA's decision related to her asylum and withholding of removal claims.

II.

"Where, as here, the BIA issued a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (citation and internal quotation marks omitted). We review questions of law de novo but "give 'substantial deference . . . to the BIA's interpretation of the INA and accompanying regulations.'" *Id.* (alteration in original) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). We review factual findings under the highly deferential substantial-evidence standard. *Id.* The BIA's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

Asylum and withholding of removal claims face similar requirements. For asylum, an alien must show that she is a "refugee." 8 U.S.C. § 1158(b)(1)(B)(i). A refugee is someone "who is unable or unwilling to return to . . . [her] country because of persecution or a well-founded fear of

persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A); *Kante v. Holder*, 634 F.3d 321, 325 (6th Cir. 2011). Similarly, for withholding of removal, an alien must show that her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."[2] 8 U.S.C. § 1231(b)(3)(A).

Rodriguez-Lopez rests her claims for relief on her alleged membership in various social groups. She relies primarily on her alleged membership in the social group of "indigenous Guatemalan women who cannot leave a relationship," but also alleges membership in social groups of "Guatemalan women," "indigenous Guatemalan women," "indigenous Guatemalan women living in Guatemala's Western Highlands," and "unmarried indigenous Guatemalan women with children not living with the father of their children."

*Indigenous Guatemalan Women Who Cannot Leave a Relationship.* The BIA did not decide whether this was a cognizable social group but instead agreed with the IJ that Rodriguez-Lopez could not show membership in the alleged group because she was able to leave her relationship with Carlos.[3] The BIA explained that Rodriguez-Lopez had "testified that she left

---

[2] The BIA determined that because Rodriguez-Lopez could not establish eligibility for asylum, she also could not establish eligibility for withholding of removal. On appeal, Rodriguez-Lopez does not treat her withholding of removal claim any differently than her asylum claim. So for the purposes of this appeal, we consider them together.

[3] Before we address the BIA's reasoning, we first note the pending rulemaking "addressing the circumstances in which a person should be considered a member of a particular social group." *Matter of A-B-*, 28 I. & N. Dec. 307, 308 (A.G. 2021) (citing Exec. Order No. 14,010, 86 Fed. Reg. 8267, 8271 (Feb. 2, 2021)). Rodriguez-Lopez's proposed group is similar to the group the BIA had found cognizable in *Matter of A-R-C-G-*, 26 I. & N. Dec. 388, 392 (B.I.A. 2014)—"married women in Guatemala who are unable to leave their relationship[s]." But the Attorney General overruled *A-R-C-G-*, *see Matter of A-B-*, 27 I. & N. Dec. 316, 317 (A.G. 2018), and cast considerable doubt as to whether such a group, made up of persons suffering "personal, private conflict rather than persecution on a protected ground," could ever be cognizable. *Id.* at 332. Recently, however, the new Attorney General vacated *Matter of A-B-* and instructed "immigration judges and the Board [to] follow pre-*A-B*-[] precedent, including *Matter of A-R-C-G-*." *Matter of*

her alleged persecutor in Escuintla Department and moved to Guatemala City for approximately 20 days on one occasion, and to her mother's home in Huehuetenango Department for approximately 2 months on another occasion." According to the BIA, Rodriguez-Lopez "did not describe suffering any harm in Guatemala City, but testified that while she remained with her mother, her alleged persecutor pleaded with her to return to him and threatened to take one of her children if she refused; she eventually returned to the home they shared because it was close to her place of employment." The BIA agreed with the IJ that Rodriguez-Lopez had thus not shown that she was unable to leave her relationship with Carlos.

Here, our deferential standard of review requires us to affirm the BIA's decision that Rodriguez-Lopez has failed to establish membership in her proposed social group of "indigenous Guatemalan women who cannot leave a relationship." Rodriguez-Lopez must establish that "any reasonable adjudicator would be compelled to conclude to the contrary." *Umaña-Ramos*, 724 F.3d at 670 (quoting 8 U.S.C. § 1252(b)(4)(B)). This she cannot do.

Rodriguez-Lopez testified that she tried to move away from Carlos; she stayed "20 days in the capital city." Her reason for returning was not Carlos but because she could not find a job. She had to return "to the place where [she] had a job." Rodriguez-Lopez also moved to her mother's home for about two months. Here, she was not entirely free from contact with Carlos, as "he would come by or he would call," and he even threatened to take the child they had together back to Escuintla if Rodriguez-Lopez did not go back with him. She testified, however, that she went back not because Carlos had threatened her, but because "he would call me and he would ask me to go back with him, he would really plead."

---

*A-B-*, 28 I. & N. Dec. at 309. The BIA here did not rely on *A-B-*, and because we do not decide whether Rodriguez-Lopez's proposed social group is cognizable, neither the Attorney General's instruction nor the pending rulemaking has any effect on our decision.

Rodriguez-Lopez says that her case is indistinguishable from *Juan Antonio v. Barr*, in which this court held that the BIA erred by concluding that a petitioner who had lived away from her abuser for over a year had not shown membership in the social group of "married indigenous women in Guatemala who are unable to leave their relationship." 959 F.3d 778, 792 (6th Cir. 2020). The BIA found *Juan Antonio* distinguishable, and we agree. To begin, the petitioner in *Juan Antonio* was married to her abuser. *Id.* Her attempts to legally leave the relationship were fruitless; the legal constraints created by the continued marriage were important to the court's opinion that the petitioner could not leave her relationship. *See id.* Rodriguez-Lopez is not married to Carlos. In addition, during the time that the petitioner in *Juan Antonio* spent away from her abuser, her abuser violated a restraining order and visited her, constantly threatened her, beat her child, and purchased a gun and threatened to kill her. *Id.* at 791. While we do not minimize the seriousness of the threats to Rodriguez-Lopez by Carlos, we cannot say that the BIA erred by finding *Juan Antonio* distinguishable. And, accordingly, we cannot say that any reasonable adjudicator would be compelled to conclude that Rodriguez-Lopez had established membership in the social group of "indigenous Guatemalan women who cannot leave a relationship." The BIA's decision therefore was supported by substantial evidence.

*Remaining Social Groups*. The BIA found Rodriguez-Lopez's remaining groups not cognizable for various reasons. Rodriguez-Lopez has not established error.

The BIA determined that the proposed groups of "Guatemalan women" and "indigenous Guatemalan women" were overbroad, "particularly given that the indigenous groups of Guatemala comprise approximately 40 percent of the population of that country." Although Rodriguez-Lopez argues that the BIA erred by focusing on the size of the group, we often have dismissed proposed social groups as too broad or too generalized, and frequently with groups much narrower than this.

*See, e.g.*, *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005) (recognizing that "almost all of the pertinent decisions have rejected generalized, sweeping classifications for purposes of asylum" and finding the group of "young (or those who appear to be young), attractive Albanian women who are forced into prostitution" too generalized); *Umaña-Ramos*, 724 F.3d at 673–74 (determining that the social group of "young Salvadorans who have been threatened because they refused to join the MS gang" was too broad and not cognizable "because it could include all Salvadoran youth who are not members of the MS gang" (alteration adopted)); *Escobar-Batres v. Holder*, 385 F. App'x 445, 447 (6th Cir. 2010) ("Escobar's proposed social group is simply too broad, as it consists of any female teenage citizen who refuses to join the *Maras* and could include all Salvadoran teenage girls who are currently not in the *Maras*."); *Paplekaj v. Holder*, 411 F. App'x 844, 846 (6th Cir. 2011) (concluding that the social group of young women from Albania was too broad and not cognizable).  The BIA reasonably concluded that Rodriguez-Lopez's social groups of "Guatemalan women" and "indigent Guatemalan women," which are more expansive than many of the groups previously rejected by this court, were too broad to be cognizable.

As for the proposed group of "indigenous Guatemalan women living in Guatemala's [W]estern [H]ighlands," the BIA explained that Rodriguez-Lopez's "own experiences of moving from the western highlands of Guatemala to its capital and a coastal region in search of employment" established that the group was not immutable.  On appeal, Rodriguez-Lopez does not contest this conclusion.  As a result, she has forfeited any argument related to this social group. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).

Similarly, Rodriguez-Lopez's brief on appeal contains only one or two sentences regarding the proposed social group of "unmarried indigenous Guatemalan women with children not living with the father of their children."  She does not grapple with the BIA's conclusion that

Rodriguez-Lopez's evidence did not "establish[] the particularity or social distinction of the proposed group." So she has forfeited this issue too. *See id.*

Rodriguez-Lopez has not established that the BIA erred by concluding that her proposed social groups were not cognizable.

* * *

We DENY the petition for review.