RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

MATEO ALEXANDER MATEO-ESTEBAN,

*Petitioner*,

*v.*

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 23-3951

─────────────

On Petition for Review from the Board of Immigration Appeals,
No. A 208 196 601.

Decided and Filed:  January 13, 2025

Before:  McKEAGUE, GRIFFIN, and LARSEN, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ON BRIEF:**  Terence G. Hoerman, AMERICAN IMMIGRATION HELP NOW, P.C., Grosse Pointe Park, Michigan, for Petitioner.  Sarah E. Witri, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────

## OPINION

─────────────

LARSEN, Circuit Judge.  Mateo Alexander Mateo-Esteban and his father Montejo entered the United States illegally.  Mateo-Esteban applied for asylum, withholding of removal, and protection under the Convention against Torture (CAT).  The immigration judge (IJ) and Board of Immigration Appeals (BIA or Board) ordered him removed because he had not established a legally cognizable social group and did not demonstrate that the Guatemalan government would acquiesce in his torture if he returned.  For these same reasons, we DENY the petition for review.

I.

Mateo-Esteban and his father, Montejo, natives of Guatemala, entered the United States illegally in 2015. Mateo-Esteban was five years old at the time. The Department of Homeland Security (DHS) immediately served Montejo personally with a notice to appear (NTA); and because Montejo had been deported just the year before, DHS reinstated his prior removal order. DHS also personally served Mateo-Esteban with an NTA charging him with removability. Mateo-Esteban and Montejo failed to appear at the appointed hearing before an IJ and were ordered removed in absentia. Three weeks later, Mateo-Esteban's counsel moved to reopen on their behalf, claiming a lack of notice. The IJ rejected the motion, but the BIA eventually granted it. At the reopened hearing before the IJ, Mateo-Esteban and Montejo admitted the factual allegations contained in the NTA and their removability, but Mateo-Esteban immediately filed an application for asylum, withholding of removal, and CAT protections since this was his first entry into the United States. Montejo was permitted to remain in the country while his son's claims were pending.

Three years later, Montejo and Mateo-Esteban appeared at their removal, asylum, and CAT hearing where Montejo testified about the circumstances under which they departed Guatemala. Montejo testified that, in 2014, he was working at a fruit and vegetable market when he was approached by suspected gang members who began extorting him for money. The gang eventually upped its charge and, when Montejo couldn't pay, the gang members threatened "they were going to take my son away . . . so as to give me a reason to pay them." A.R. 7-2, PageID 120. When asked why he didn't report this to the police, Montejo explained that the police worked with the gangs, and he was afraid the police would tell the gangs, who would come looking for him. He did tell an uncle, but he never asked this uncle to help him pay the gangs or to provide an affidavit in this case. Montejo then took Mateo-Esteban and fled to the United States. Montejo is not married to Mateo-Esteban's mother, but the child speaks with her every weekend. She also has not provided any affidavits in this case.

After Montejo's testimony, the IJ denied Mateo-Esteban's application for asylum, withholding of removal, and CAT protection. The IJ found that Mateo-Esteban's proposed social group, "people who are afraid of gangs in Guatemala," was not legally cognizable and that

he failed to demonstrate that Guatemalan government officials would allow his torture by private actors if he returned.  A.R. 7-2, PageID 4–5, 73–74.  In the alternative, the IJ found that Montejo's testimony lacked credibility and that he and Mateo-Esteban could have relocated within Guatemala or Mateo Esteban could have gone to live with his mother.  The BIA affirmed the denial of the asylum and withholding claims on the ground that Mateo-Esteban's particular social group was not cognizable.  It affirmed the denial of the CAT claim on the ground that Mateo-Esteban had failed to show a likelihood of government acquiescence in his torture.  Mateo-Esteban timely petitioned this court for review.

## II.

"Where, as here, 'the BIA reviews the [IJ]'s decision and issues a separate opinion, rather than summarily affirming the [IJ]'s decision, we review the BIA's decision as the final agency determination.'"  *Seldon v. Garland*, 120 F.4th 527, 531 (6th Cir. 2024) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).  We also consider the IJ's decision, however, "to the extent the BIA adopted the immigration judge's reasoning."  *Khalili*, 557 F.3d at 435.  We review the BIA's legal conclusions de novo.  *Seldon*, 120 F. 4th at 531.  We review the agency's factual findings for "substantial evidence," meaning that we must treat them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *see Seldon*, 120 F.4th at 531.

## III.

## A.

To begin, Mateo-Esteban argues that the IJ and BIA erred in rejecting his claim for asylum and withholding of removal on the ground that he had failed to show membership in a legally cognizable particular social group.  We disagree.

Non-citizens seeking asylum or withholding of removal must prove that they are refugees.  Federal law defines a refugee in relevant part as someone unable or unwilling to return to his native country because of past "persecution or a well-founded fear of [future] persecution on account of . . . membership in a particular social group."  8 U.S.C. § 1101(a)(42); *Umana-*

*Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). We review de novo whether a proposed particular social group is legally cognizable. *Turcios-Flores v. Garland*, 67 F.4th 347, 354 (6th Cir. 2023). To prove membership in a legally cognizable social group, the petitioner must show that his proposed group (1) shares a common immutable characteristic other than the fact that it is targeted for persecution; (2) is particular and defined with sufficient precision to delimit its membership; and (3) is socially distinct such that members of the group are perceived as a group by society. *See Umana-Ramos*, 724 F.3d at 671. The IJ and BIA concluded that Mateo-Esteban's application failed at the second and third prongs.

As a preliminary matter, Mateo-Esteban argues that the IJ and BIA erred by characterizing the social group he claims to be a part of as "people afraid of gangs in Guatemala," when in fact his claimed social group was "minors threatened to be kidnapped by gangs in Guatemala." Appellant Br. at 12. But his attorney presented only the former group to the IJ. When pressed by the IJ about whether he was sure he wanted to define his social group as "people afraid of gangs," Mateo-Esteban's attorney admitted "that is the only social group, really, that we can really put him under." A.R. 7-2, PageID 141–42. Despite this admission, Mateo-Esteban tried to delineate a new social group—"minors threatened to be kidnapped by gangs in Guatemala"—during his appeal to the BIA. The BIA rejected this attempt, relying on its decision in *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 192 (B.I.A. 2018).

In *W-Y-C-*, the BIA noted that an applicant for asylum or withholding of removal "must clearly indicate on the record before the Immigration Judge" the "exact delineation of any particular social group(s) to which she claims to belong." *Id.* at 191 (citation and internal quotation omitted). This is "importan[t]," the BIA explained, because the IJ must find multiple facts that are pegged to the particular social group proposed. *Id.* Those include "whether the group is immutable and is recognized as particular and socially distinct" and whether the applicant can show "membership in that group, and persecution or fear of persecution on account of" belonging to the group. *Id.* To avoid the endless remands that would result "if an applicant is allowed to change the description of her purported social group midstream," the Board held that it will not consider on appeal particular social groups that were not first presented to the IJ. *Id.* at 190–92 (citation omitted). Because, in this case, Mateo-Esteban did not present the group

"minors threatened to be kidnapped by gangs in Guatemala" to the IJ, the Board refused to consider it, consistent with its ruling in *W-Y-C-*.

On appeal in this court, Mateo-Esteban again contends that "in fact" his "particular social group was minors threatened to be kidnapped by gangs in Guatemala."[1]  Appellant Br. at 8.  But the record tells another story.  Mateo-Esteban's counsel expressly acknowledged before the IJ that, "unfortunately," "people afraid of gangs in Guatemala" "is the only social group, really, that we can really put [Mateo-Esteban] under."  A.R. 7-2, PageID 141–42.  In light of this concession, much more than "substantial evidence" supports the BIA's finding that this was the lone group Mateo-Esteban presented to the IJ.  And Mateo-Esteban does not dispute that the BIA was legally entitled to treat any newly raised social groups as forfeited.  *See W-Y-C-*, 27 I. & N. Dec. at 190–91.  Nor does he contend that the BIA erred by concluding that the group he did present to the IJ—"people afraid of gangs in Guatemala"—lacks particularity and social distinction.

In sum, Mateo-Esteban has not shown that he belongs to a legally cognizable particular social group.  That defeats his claims for asylum and withholding of removal.

B.

Mateo-Esteban next argues that the BIA erred in denying his claim for CAT protection. We again disagree.

To be eligible for CAT protection, Mateo-Esteban must prove by a preponderance of the evidence that he will likely face torture in Guatemala and that it will be inflicted "with the consent or acquiescence of, a public official."  *See* 8 C.F.R. § 1208.18(a)(1); *Vasquez-Rivera v. Garland*, 96 F.4th 903, 911 (6th Cir. 2024).  Acquiescence requires that the public official know of the torture prior to its occurrence and "thereafter breach his or her legal responsibility to intervene to prevent such activity."  8 C.F.R. § 1208.18(a)(7); *Ali v. Reno*, 237 F.3d 591, 597 (6th Cir. 2001).

---

[1]We do not mean to intimate that this group would have been legally cognizable had it been presented to the IJ.  Because the group was not raised, we take no position on the question.

Mateo-Esteban relies on two pieces of evidence to support his claim:  a portion of the 2018 United Nation's Human Rights Report discussing the Guatemalan police's human rights record, and his father's testimony about prior gang extortion and threats to kidnap Mateo-Esteban.  This evidence is insufficient to compel the conclusion that a government official would acquiesce to Mateo-Esteban's torture upon his return to Guatemala.

The 2018 United Nation's Human Rights Report does little to assist the CAT claim.  At the hearing, the IJ took judicial notice of this Report because Mateo-Esteban failed to introduce any evidence of Guatemala's country conditions.  The IJ acknowledged that a "significant crime problem" still exists in Guatemala.  A.R. 7-2, PageID 66.  But the Report shows that the Guatemalan government has invested significant resources to investigate and combat police misconduct.  And when "a country has made meaningful efforts to control private violence but is still struggling to gain the upper hand, we generally do not say that public officials" have acquiesced.  *Sabastian-Andres v. Garland*, 96 F.4th 923, 931 (6th Cir. 2024); *Chan-Poroj v. Garland*, 2023 WL 3868649, at *4 (6th Cir. June 7, 2023) (rejecting claim that the Guatemalan government's inability to control gangs constituted acquiescence).  Considering this report, the BIA reasonably concluded that "while the Guatemalan government may have difficulties controlling gangs, such difficulties do not amount to acquiescence."  A.R. 7-2, PageID 4.

Montejo's testimony does not add meaningfully to his claim, certainly not enough that we would be compelled to reverse the Board's decision.  Montejo testified that, in 2014 and 2015, gangs extorted him for money and threatened to kidnap his son.  But he did not report the extortion or threatened kidnapping to authorities, a point the IJ noted.  We usually treat a failure to inform authorities "as a signal that the government did not turn a willfully blind eye to the applicant."  *Sabastian-Andres*, 96 F. 4th at 931.  "After all, if an applicant 'never told the government about the threats, the authorities never had a chance to acquiesce in any violence,' and 'it is impossible to know how they would have responded to the call of duty.'"  *Id.* (citations omitted).  That said, while a failure to report is "important in our analysis, [it] is not dispositive."  *Id.*

Here, Montejo testified that he did not report the threats or extortion because "the police . . . work together with [the gangs] in my country and I was afraid that they would look for

me." A.R. 7-2, PageID 121. But Montejo offered no factual foundation to support his conclusion. And our cases demonstrate that an applicant's mere belief that the police could not or would not protect him from gang violence is insufficient to compel the conclusion that the government would acquiesce in torture, at least where other evidence shows that the government is taking steps to combat corruption. *See Sabastian-Andres*, 96 F. 4th at 932; *Zaldana Menijar v. Lynch*, 812 F.3d 491, 501–02 (6th Cir. 2015); *Lino-Sabio v. Barr*, 805 F. App'x 385, 389 (6th Cir. 2020).

Mateo-Esteban counters that the IJ erred in finding that his father's testimony was not credible. But this argument is a red herring. The IJ found that Montejo was not a credible witness as alternative support for denying Mateo-Esteban's petition. And the BIA held that, even assuming Montejo's testimony was credible, Mateo-Esteban had failed to demonstrate government acquiescence. We likewise take all the evidence Mateo-Esteban relies on at face value; even so, it does not compel a finding that the government would acquiesce in his torture should he return. So his claim for CAT protection fails.

\* \* \*

We DENY Mateo-Esteban's petition for review.