NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1299n.06

No. 12-3496

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Dec 18, 2012*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| XUEJIAO DENG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW OF |
| v. | ) | A FINAL DECISION OF THE |
| | ) | BOARD OF IMMIGRATION |
| ERIC H. HOLDER, JR., Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |

BEFORE:  CLAY, GILMAN, and McKEAGUE, Circuit Judges.

PER CURIAM.  Xuejiao Deng, a Chinese citizen, petitions through counsel for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from an immigration judge's (IJ) decision denying her applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

Deng was born in China in 1989.  She bases her claims for relief on her allegation that she was raped by two policemen in May 2006, when she went to the police station to inquire about her mother, who had been arrested for attending an underground church.  She became pregnant and determined to keep the baby to prove that she had been raped.  She reported the incident, but no action was taken against the policemen.  In November 2006, she was forced by government agents to have an abortion, allegedly to cover up the fact that she had been raped, but the hospital gave her a certificate documenting the abortion, which she kept as proof of her rape.  She was dismissed from

her school, but she was able to obtain a valid student visa with which she entered this country in March 2007 with her own passport, and attended the University of Oklahoma. In October of that year she returned to China. She explained alternately that she missed her mother or that her mother had an undisclosed illness. About a month after her return, she allegedly was called to the police station and interrogated, but was allowed to leave because she had a cold and fever and the police believed she was contagious. She was told not to leave her neighborhood without reporting to the police. However, in December, she returned again to the United States, either due to her health or because she feared further harassment by the police. She again used her own passport and student visa, but when questioned as to how this was possible, she hinted that a friend of the family may have helped her bypass customs. In her brief before this court, she alleges that she may have been permitted to leave because she was a troublemaker. She did not continue her studies in the United States, but applied for the above relief.

At the conclusion of Deng's hearing, the IJ denied her requests for relief. The IJ found that Deng's rape was not persecution based on a protected ground, but instead a criminal act. The IJ found Deng's claim that she had undergone a forced abortion not credible. Furthermore, her claim of fear of persecution if she returned to China was found not credible because she had previously returned without incident other than a brief interrogation. On appeal, the BIA rejected Deng's argument that the IJ erred in finding her claim to have undergone a forced abortion not credible. It also upheld the IJ's finding that Deng's return to China without significant problems undercut any claim to a fear of persecution if she returns. One member of the BIA dissented without opinion.

In her brief before this court, Deng reasserts her argument that the IJ erred in finding that her claim of having undergone a forced abortion was not credible. She claims that she is eligible for asylum and withholding of removal based on an imputed political opinion. She has abandoned her claim for protection under the CAT. Additionally, she argues that she was denied due process at her hearing due to problems with the interpreter.

Although Deng argues that the IJ never addressed the issue of whether she suffered past persecution based on her imputed support of her mother's participation in underground religious services, the IJ did specifically address this issue and found that Deng never stated that her rape was based on her mother's religious activities, but rather that her mother's arrest and Deng's mission to the police station merely provided the opportunity for the policemen to commit a criminal act. The IJ specifically found that Deng had not established that a protected ground was the reason for her rape. Criminal acts not based on a protected ground are not persecution. *See Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137 (6th Cir. 2010)*; Lumaj v. Gonzales*, 462 F.3d 574, 577-78 (6th Cir. 2006).

Deng argues that interpreter problems denied her due process, citing *Amadou v. INS*, 226 F.3d 724, 726 (6th Cir. 2000). The transcript indicates that the interpreter in this case was at a remote location, participating by video. Counsel for the government complained that the interpreter was speaking too loudly, causing feedback. It appears that this counsel and interpreter had had problems before, where government counsel complained that the interpreter was too quiet, and that the interpreter was overcompensating on this occasion. The IJ was frustrated by the situation, and discussed at length the budget problems involved in having the interpreters physically present.

However, absent from any of this discussion or the transcript as a whole is any indication that Deng and the interpreter were having trouble understanding each other. *See Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005) (affirming an adverse credibility determination where interpreter problems did not play "a significant part in the judge's credibility determination"). We therefore conclude that Deng has not established a denial of due process due to interpreter problems.

Deng's principal argument is that the IJ erred in finding her claim of having undergone a forced abortion not credible. We review the IJ's credibility findings to determine whether they are supported by substantial evidence. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). Deng makes two arguments regarding the credibility finding at issue here. First, she points out that the IJ relied on her answers to two poorly worded questions by government counsel during cross-examination in finding a contradiction in her story. First, counsel stated that Deng had requested the abortion because she was an unmarried minor, and ended his statement with "is that not true?", to which Deng answered "Right." Especially given that this question had to be translated into Mandarin, it is difficult to know whether Deng was agreeing that counsel's statement was true or not true. Later, government counsel asked a compound question, whether Deng had requested an abortion and whether the hospital gave her an abortion certificate, which she answered affirmatively. It is not possible to be certain that Deng was agreeing with both parts of this question. Otherwise, in her application, direct, and re-direct testimony, she consistently claimed that she had been forced to have the abortion. Deng also points out that the BIA relied on *Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 263 (2d Cir. 2007), in finding that abortion certificates are given only in cases where the abortion was voluntary. *Xiao Xing Ni* based this conclusion on the 1998 State Department Country

Conditions Report. However, the 2007 Report relevant in this case indicates that an abortion certificate could be issued even where the abortion was not voluntary.

However, even discounting these two bases for finding Deng's testimony incredible, there were numerous inconsistencies and implausibilities in her story, as outlined above, which support the finding of lack of credibility. *See Abdurakhmanov v. Holder*, 666 F.3d 978, 982-83 (6th Cir. 2012). Most importantly, Deng's voluntary return to China, the lack of any persecution encountered there, and her ability to return again to this country undercut her claim of fear of future persecution. *See Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1091 (9th Cir. 2005). We therefore conclude that, despite the two arguments above, there was substantial evidence to support the IJ's finding of lack of credibility and, therefore, the denial of asylum. By failing to establish entitlement to asylum, Deng necessarily failed to establish entitlement to withholding of removal. *See Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009). Finally, she has abandoned her claim regarding protection under the CAT.

For all of the above reasons, the petition for review is denied.