**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0376n.06

No. 18-3903

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 24, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NOHE LORENZANA-MONTEPEQUE, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW OF |
| | ) | A FINAL ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| WILLIAM P. BARR, Attorney General, | ) | |
| | ) | |
| **Respondent.** | ) | OPINION |
| | ) | |

Before: MOORE, KETHLEDGE, and MURPHY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Nohe Lorenzana-Montepeque and her minor son (who is a rider on her asylum application) are citizens of Guatemala. They came to the United States in May 2016, seeking to escape individuals who extorted their family for money in Guatemala. But the harm experienced by Lorenzana-Montepeque was not, as required by law, on account of her membership in a particular social group. Lorenzana-Montepeque argues differently and puts forth "Guatemalan taxi owners closely related to individuals who have paid ransom before" as a putative social group. No facts compel us to reach a different conclusion from the Board of Immigration Appeals ("BIA") or the immigration judge ("IJ"), and this court's precedent otherwise forecloses her argument. Accordingly, we **DENY** the petition for review.

**I. BACKGROUND**

Lorenzana-Montepeque and her son arrived in the United States from Guatemala on about May 2, 2016. *See* A.R. at 408 (Notice to Appear). Lorenzana-Montepeque admitted the

allegations in the Notice to Appear, conceded removability, and filed an I-589 Application for Asylum, listing her son as a rider on the application. *See* A.R. at 50–51 (July 14, 2016 Hr'g Tr.); A.R. at 349–63 (I-589 Application); A.R. at 439–49 (Rider Application). On her application, she stated that she was seeking asylum and withholding of removal on the basis of membership in a particular social group, as well as other reasons not relevant here. A.R. at 353 (I-589 Application).

Lorenzana-Montepeque's understandable fear of returning to Guatemala stems from two incidents of extortion—one directly involving her immediate family in 2014, and another involving her sister in 2013. Both incidents are relevant to her argument before this court.

In February 2014, individuals began calling Lorenzana-Montepeque's husband and demanding 25,000 quetzals (over $3,200). A.R. at 104–05, 117, 122 (Removal Hr'g Tr.). Lorenzana-Montepeque never spoke to these individuals herself, and they never identified themselves. *Id.* at 104–05. These individuals threatened to kidnap Lorenzana-Montepeque's oldest daughter if the family did not pay. *Id.* at 105. After six or seven days of phone calls, Lorenzana-Montepeque and her husband decided to pay. *Id.* at 117. They sold their taxi for 15,000 quetzals and borrowed the remainder as a loan from a man named Jeremias. *Id.* at 109–10. The family never reported this incident to the police because they feared that the individuals demanding the money would kill them. *Id.* at 107. Lorenzana-Montepeque admitted that she did not know why these extortion demands came to her or her family. *Id.* at 108.

Prior to this incident, Lorenzana-Montepeque's sister and mother were also subjected to extortion demands in August 2013. At that time, the extortionists (again, unidentified individuals) demanded 35,000 quetzals (over $4,500) from the mother and further threatened to kill the sister's

children if this amount was not paid. *Id.* at 119–20. After two weeks of phone calls, the sister ultimately paid; she sent the money from the United States, where she lived. *Id.* at 120, 122. (Lorenzana-Montepeque learned of this incident from her mother, who lived right next door to her with the sister's two children. *Id.* at 119–21.)

At her removal hearing, Lorenzana-Montepeque testified that these were the only two incidents of extortion that her family has experienced, *id.* at 122-23, and that six of her seven children still live with Lorenzana-Montepeque's mother in Guatemala, *id.* at 133. Moreover, she testified that she is aware of "a lot of cases" in which other families have been subjected to similar extortion demands. *See id.* at 134–35. Lorenzana-Montepeque fears returning to Guatemala primarily because of the violence in the country, *id.* at 125, and because she owes Jeremias 12,000 quetzals (the original 10,000, plus 2,000 more in interest), *id.* at 126–27; he threatened to take items from the house in Guatemala if he is not paid, *id.* at 129.

The IJ denied Lorenzana-Montepeque's (and her son's) applications for asylum, for withholding of removal, and for protection under the Convention Against Torture (which is not challenged in this court). A.R. at 30–45 (IJ Order). In particular, the IJ found that Lorenzana-Montepeque's fear of harm related to general conditions of violence in the country, which is not enough to establish eligibility for asylum. *Id.* at 43 (citing *Renteria-Cortes v. Holder*, 563 F. App'x 466, 468 (6th Cir. 2004)). Furthermore, the IJ found that the family "was subjected to threats for the extorter's own financial gain" and not on the basis of her family membership (or another proposed social group). A.R. at 44 (IJ Order) ("The fact that her family members continue to live

in Guatemala without any negative consequence further supports this finding"). Lorenzana-Montepeque appealed to the BIA.

The BIA affirmed the IJ's order, essentially agreeing with the IJ's findings of fact and reasoning. A.R. 3–4 (BIA Decision). The BIA added that the IJ could reasonably conclude that Lorenzana-Montepeque's "circumstances cannot be meaningfully distinguished from that of any other segment of Guatemalan society exposed to criminal predation." *Id.* at 4 (collecting cases denying applications for asylum premised on the basis of a general fear of violence alone).

Lorenzana-Montepeque now petitions this court for review of the BIA's final order.

## II. STANDARD OF REVIEW

"We review de novo questions of law and give 'substantial deference . . . to the BIA's interpretation of the INA [Immigration and Nationality Act] and accompanying regulations.'" *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)). On the facts, meanwhile, we review whether the IJ's and BIA's factual findings are supported by substantial evidence. *See Khalili*, 557 F.3d at 435. "Moreover, Congress has specified that 'the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Umaña-Ramos*, 724 F.3d at 670 (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III. MEMBERSHIP IN A PARTICULAR SOCIAL GROUP

A person may be granted asylum if that individual is a "refugee," as defined by 8 U.S.C. § 1101(a)(42)(A). *See* 8 U.S.C. § 1158(b)(1). In turn, to qualify as a "refugee," a person must be "unable or unwilling to return to, and . . . unable or unwilling to avail himself or herself of the

protection of, that country because of persecution or a well-founded fear of persecution *on account of* race, religion, nationality, *membership in a particular social group*, or political opinion . . . ." *Id.* at § 1101(a)(42)(A) (emphasis added). If a person cannot "establish eligibility for asylum . . . [s]he also cannot satisfy the more onerous burden for withholding of removal." *See Kaba v. Mukasey*, 546 F.3d 741, 751 (6th Cir. 2008) (citing *Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001)).

Lorenzana-Montepeque cannot establish that she suffered harm on account of her membership in a particular social group, and consequently, she is not eligible for asylum or for withholding of removal. Lorenzana-Montepeque seems to argue for a sort of hybrid social group; in her brief, she often refers to her and her husband's status as taxi owners alongside her proposed "family membership" social group. *See, e.g.*, Pet'r Br. at 4 (referring to "the social group of Guatemalan taxi owners closely related to individuals who have paid ransom before"). To the extent that her argument rests on family membership alone, we will address that separately. As for the potential hybrid (taxi owners plus family), Lorenzana-Montepeque is essentially arguing for a social group that this court has repeatedly refused to recognize.

First, family membership "is widely recognized by the caselaw" as a particular social group. *See Al-Ghorbani v. Holder*, 585 F.3d 980, 995 (6th Cir. 2009) ("[A] family is a 'particular social group' if it is recognizable as a distinctive subgroup of society"). Lorenzana-Montepeque relies heavily on the fact that the extortionists knew the name of her oldest daughter. The problem with this argument is that "her family members," including her oldest daughter, "continue to live in Guatemala without any negative consequence . . . ." *See* A.R. at 44 (IJ Order); *see also* A.R. at

4 (BIA Decision) ("At most, it appears that the family relationship was coincidental or subordinate to the primary motivation of the extortionists to enrich themselves"). Moreover, Lorenzana-Montepeque and her family continued to live in Guatemala for two years after the February 2014 extortion incident without receiving any further threats. (Her husband, however, left for the United States in March 2014. A.R. 132 (Removal Hr'g Tr.).) We cannot say that we are compelled to reach a contrary finding. *See Umaña-Ramos*, 724 F.3d at 670; *see also INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992) ("[S]ince the [INA] makes motive critical, [s]he must provide *some* evidence of it, direct or circumstantial. And if [s]he seeks to obtain judicial reversal of the BIA's determination, [s]he must show that the evidence [s]he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution [on account of membership in a particular social group]. That [s]he has not done.").

Lorenzana-Montepeque also points to the fact that her sister, who lives in the United States, previously paid an extortion demand. The fact that her sister paid previously, Lorenzana-Montepeque says, indicated that the family could "pay any monetary demands." Pet'r Br. at 15. Framed this way, the proposed social group turns on perceived wealth or a ready access to money.

This argument suffers from factual and legal issues. Factually, this claim encounters the same problems as above—two incidents of extortion occurred, and family members have continued to live in Guatemala in the five-plus years since without further harm. Legally, our court has rejected this proposed social group many times before. *See Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015) (collecting cases); *Diaz-Hernandez v. Holder*, 635 F. App'x 159, 161 (6th Cir. 2015) ("We have consistently held that those who are perceived as wealthy do

not constitute a particular social group"); *Reyes-Cardona v. Holder*, 565 F. App'x 366, 368 (6th Cir. 2014) (holding that "perceived wealth as former inhabitants of the United States" is not a particular social group that is protected by the INA). Therefore, we too reject this argument.

Second, Lorenzana-Montepeque's and her husband's status as taxi owners, on this record, does not help. She argues that her family was targeted, and her oldest daughter was threatened, because the extortionists knew the family "owned a taxi business and had items to liquidate to meet the monetary demands . . . ." *See* Pet'r Br. at 15. This social group sounds similar to the "those who are perceived as wealthy" social group, and we have likewise rejected this sort of argument in the past. *See Contreras-Torres v. Holder*, 542 F. App'x 456, 458 (6th Cir. 2013) ("Business owners or others perceived as having money who are targeted for extortion demands do not constitute a protected social group"); *Khozhaynova v. Holder*, 641 F.3d 187, 195 (6th Cir. 2011) ("While these events [of extortion] are unfortunate, and may have occurred because of her status as a business owner, they are insufficient to establish persecution on the basis of either a protected social group or her political opinion"). As we have held for business owners, a person's status as a taxi owner is not an adequate "narrowing characteristic," and therefore taxi owners are not a "particular social group." *See Khozhaynova*, 641 F.3d at 195. No evidence in this record compels us to conclude differently. *See Umaña-Ramos*, 724 F.3d at 674 (holding that a proposed social group was "not sufficiently socially visible" because "no evidence in the record" suggested that the group was "perceived as a distinct segment of the [country's] population").

What is left is a fear of the "[g]eneral conditions of rampant violence," which standing alone are not enough to establish eligibility for asylum. *Harmon v. Holder*, 758 F.3d 728, 735 (6th

Cir. 2014) (citing *Umaña-Ramos*, 724 F.3d at 670). Here, Lorenzana-Montepeque stated that she did not know why her family was targeted for extortion, but she admitted that there are "a lot of cases" in which other families have been subjected to similar mistreatment. A.R. at 108, 134–35 (Removal Hr'g Tr.). She further explained that she feared the general violence in Guatemala. *Id.* at 125. This is not enough to establish eligibility for asylum, and thus also not enough to establish eligibility for withholding of removal. *See Kaba*, 546 F.3d at 751.

In sum, we are not compelled to reach a conclusion contrary to the BIA. Lorenzana-Montepeque has not established that she and her family were targeted on a statutorily protected ground, rather than having been the "victim[s] of indiscriminate mistreatment." *See Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005). Of course, "the characterization of conduct as persecution does not necessarily turn on the severity of the conduct itself or on the frequency of the alleged incidents," *id.*, but "[c]riminal acts not based on a protected ground are not persecution." *Xuejiao Deng v. Holder*, 508 F. App'x 524, 526 (6th Cir. 2012). The problem here is the lack of evidence that the inflicted harm was on account of a particular social group.

## IV.  CONCLUSION

For these reasons, we **DENY** the petition.