NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0458n.06

No. 23-3125

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 02, 2023
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| VERONICA MENDEZ LOPEZ; JUAN RAYMUNDO AILON, | ) ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW OF A FINAL ORDER OF THE BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| MERRICK B. GARLAND, Attorney General, | ) ) | OPINION |
| Respondent. | ) ) ) | |

Before: MOORE, READLER, and MURPHY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Petitioner Veronica Mendez Lopez petitions for review of the Board of Immigration Appeals' denial of her application for asylum and withholding of removal under the Immigration and Nationality Act. Rider Petitioner Juan Raymundo Ailon petitions for review of the Board's denial of his application for withholding of removal under the INA. Because the Board relied on substantial evidence in finding that Mendez Lopez failed to show that the Guatemalan government was unable or unwilling to control her alleged persecutors, the Board correctly denied her application for asylum and withholding of removal. Because the Board relied on substantial evidence in finding that Raymundo Ailon failed to show a nexus between his alleged persecution and protected grounds, the Board also correctly denied his application for withholding of removal. Accordingly, we **DENY** the petition for review.

## I.  BACKGROUND

**A.  Procedural History**

Petitioner Veronica Mendez Lopez is a native and citizen of Guatemala.  A.R. at 1222 (Mendez Lopez Not. to Appear).  She entered the United States on or about June 12, 2000, and was not admitted or paroled by an immigration officer.  *Id.*  On August 17, 2000, Mendez Lopez's father filed an application for asylum and included Mendez Lopez on his application for relief as the unmarried child of an asylum applicant.[1]  A.R. at 432, 456 (Cristobal Mendez Asylum App.); A.R. at 62 (IJ Dec. at 1).  Mendez Lopez married Rider Petitioner Juan Raymundo Ailon in September 2004, eliminating her from her father's asylum application.  A.R. at 779 (Mendez Lopez Asylum App.).  On February 9, 2005, Mendez Lopez filed her own application for asylum and withholding of removal, including her husband, Raymundo Ailon, as a derivative applicant.  *Id.*; A.R. at 63 (IJ Dec. at 2).  She later filed a revised application seeking asylum and withholding of removal under the INA as well as protection under the Convention Against Torture, again including her husband as a derivative applicant.  A.R. at 778 (Mendez Lopez Asylum App.).  Raymundo Ailon is a native and citizen of Guatemala who entered the United States on or about September 11, 2001, and was not admitted or paroled by an immigration officer.  A.R. at 1480 (Raymundo Ailon Not. to Appear).

On March 19, 2005, the Department of Homeland Security initiated removal proceedings against Mendez Lopez by serving her with a Notice to Appear.  A.R. at 1222 (Mendez Lopez Not. to Appear).  On April 11, 2013, Mendez Lopez's hearing commenced.  A.R. at 184 (Apr. 11, 2013 Hr'g Tr.).  Raymundo Ailon filed his own application for asylum and withholding of removal,

---

[1]The procedural history of Mendez Lopez's father's asylum application is complicated and not at issue in this appeal.

including Mendez Lopez on his application, on March 23, 2017.[2] A.R. at 1276 (Raymundo Ailon Asylum App.); A.R. at 63 (IJ Dec. at 2).

The second day of Mendez Lopez's hearing in front of an immigration judge did not take place until September 2, 2020, over seven years after her hearing commenced. A.R. at 296 (Sept. 2, 2020 Hr'g Tr.). Over the two days of hearings in 2013 and 2020, two different immigration judges heard testimony from Mendez Lopez, Raymundo Ailon, and Mendez Lopez's father. A.R. at 184 (Apr. 11, 2013 Hr'g Tr.); A.R. at 296 (Sept. 2, 2020 Hr'g Tr.). In front of the immigration judges, Mendez Lopez claimed eligibility for asylum, withholding of removal, protection under CAT, and, in the alternative, voluntary departure, based on her membership in three particular social groups: (1) "member of indigenous group Aguacateco," (2) "family member of a member of the civil patrol of the Guatemalan army," and (3) "family members of her father." A.R. at 3 (BIA Dec. at 1) (citation omitted). She also claimed eligibility based on an actual political opinion of "opposition to membership in organized gang activity" and the "imputed political opinions of her father." *Id.* Raymundo Ailon claimed eligibility for withholding of removal based on his membership in two particular social groups: (1) "family members of Guatemalan army supporter during the Civil War," and (2) family members of Mendez Lopez's father. A.R. at 6 (BIA Dec. at 4). Raymundo Ailon also claimed eligibility based on his political opinion: "opposition to membership in organized gang activity." *Id.*

On December 21, 2020, Immigration Judge Teresa Riley denied Mendez Lopez and Raymundo Ailon's application for asylum, withholding of removal, and CAT protection. A.R. at

---

[2]The Immigration Judge concluded that Raymundo Ailon's asylum application was time-barred. A.R. at 79 (IJ Dec. at 18). He does not challenge this on appeal. We, accordingly, discuss only his application for withholding of removal.

62–92 (IJ Dec.). The Petitioners appealed (1) the denial of Mendez Lopez's asylum claim, (2) the denial of Mendez Lopez's application for withholding of removal, and (3) the denial of Raymundo Ailon's application for withholding of removal. A.R. at 3, 7 (BIA Dec. at 1, 5). On January 12, 2023, in a single-judge order, the Board of Immigration Appeals dismissed their appeal. *Id.*

## B. Factual Background

Mendez Lopez's father was a member of the civil patrol of the Guatemalan army and an opponent of the guerillas during the Guatemalan civil war. A.R. at 66 (IJ Dec. at 5); A.R. at 434 (Cristobal Mendez Asylum App.). During and following the civil war in the 1980s and early 1990s, the guerillas regularly approached Mendez Lopez's father to get him to work with them and, upon his refusal, they "threatened him eight to ten times and he was afraid they would kill him." A.R. at 66 (IJ Dec. at 5). Additionally, the guerillas carried a list of names of army supporters, some of whom they killed. *Id.* Mendez Lopez's father was on the list. *Id.* After facing these threats as well as finding dead bodies—killed by the guerillas—Mendez Lopez's father changed his and his daughter's names and moved his family to another area within Guatemala to attempt to avoid the guerillas. A.R. at 65–66 (IJ Dec. at 4–5).

After Mendez Lopez—then a child—and her family moved to a new village, the guerillas continued approaching her father and bringing the list of names to her family. A.R. at 66–67 (IJ Dec. at 5–6). By that point, Mendez Lopez's father went by a new name to try to avoid the guerillas. A.R. at 220 (Apr. 11, 2013 Hr'g Tr. at 79). Her father also legally changed Mendez Lopez's name. A.R. at 220–21 (Apr. 11, 2013 Hr'g Tr. at 79–80). Although Mendez Lopez does not recall how old she was when her name was changed, she does recall that someone from the municipal

government helped her change her name. A.R. at 286 (Apr. 11, 2013 Hr'g Tr. at 145). *See also* A.R. at 241 (Apr. 11, 2013 Hr'g Tr. at 100).

In 1991, fearing for his life, Mendez Lopez's father fled Guatemala and entered the United States. A.R. at 65 (IJ Dec. at 4). Following her father's departure, gang members turned their attention to Mendez Lopez. A.R. at 68–69 (IJ Dec. at 7–8). From the time she was a child, Mendez Lopez was regularly harassed and threatened by gang members. *Id.*; A.R. at 537 (Maria Lopez Lopez Aff.). The gang members would demand she join their gang and, when she refused, they threatened to kill her. A.R. at 69 (IJ Dec. at 8). On two occasions, a group of men physically attacked her. A.R. at 68–69 (IJ Dec. at 7–8); A.R. at 790 (Mendez Lopez Asylum App.). Mendez Lopez did not need medical attention on either occasion and did not contact the police about the attacks. A.R. at 68–69 (IJ Dec. at 7–8). The harassment and threats were ongoing until she fled Guatemala, fearing that the gang members would carry out their threats on her life. *Id.*

Raymundo Ailon, like Mendez Lopez, faced harassment, threats, and physical violence from gang members in Guatemala. A.R. at 70 (IJ Dec. at 9). From the time Raymundo Ailon was a young teenager until the time he fled to the United States, gangs would approach him, threaten him, and beat him up approximately twice a week, every week. *Id. See also* A.R. at 340–41 (Sept. 2, 2020 Hr'g Tr. at 198–99). Although Raymundo Ailon moved to various places within Guatemala, the gang members continued to find him. A.R. at 342 (Sept. 2, 2020 Hr'g Tr. at 200). He never reported the incidents to the police "because any time someone goes to the police, it's even worse, and then even if they pick them up, they will release them right away, and then there's more problems for us." A.R. at 343 (Sept. 2, 2020 Hr'g Tr. at 201). Fearing for his life, Raymundo Ailon fled Guatemala in 2001. *Id.*

5

## II. ANALYSIS

### A. Jurisdiction and Standard of Review

We have jurisdiction under 8 U.S.C. § 1252 to review the Board of Immigration Appeals' final determination ordering removal. *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013). When the BIA issues its own decision rather than summarily affirming the IJ, we review the BIA decision as the final agency decision. *Id.* We review the immigration judge's decision to the extent that the BIA adopted the IJ's reasoning. *Id.* We review factual findings under the substantial-evidence standard and review questions of law de novo. *Id.* Under the substantial-evidence standard, "we will not reverse a factual determination . . . unless we find 'that the evidence not only supports a contrary conclusion, but *compels* it.'" *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007) (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)) (emphasis in original); 8 U.S.C. § 1252(b)(4)(B). We uphold the "BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009) (quoting *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)). Because the IJ found the parties credible, "we accept their factual statements as true." *Mandebvu v. Holder*, 755 F.3d 417, 424 (6th Cir. 2014).

### B. Asylum

The INA gives the Attorney General "discretion to grant asylum to applicants who meet the definition of a 'refugee.'" *Umaña-Ramos*, 724 F.3d at 670 (citing 8 U.S.C. § 1158(b)). A "refugee" is "a person who is unable or unwilling to return to her home country because of past persecution or a 'well-founded fear' of future persecution 'on account of race, religion, nationality, membership

in a particular social group, or political opinion.'" *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)).

The INA does not define "persecution," but we have held that "persecution 'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.'" *Juan Antonio v. Barr*, 959 F.3d 778, 793 (6th Cir. 2020) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)). "[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Japarkulova v. Holder*, 615 F.3d 696, 699 (6th Cir. 2010) (quoting *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004)) (alteration in original). Physical harm is not necessary to establish past persecution, *Stserba v. Holder*, 646 F.3d 964, 972 (6th Cir. 2011); unfulfilled threats alone can constitute persecution, albeit only in exceptional cases such as where the "threats [are] of a most immediate and menacing nature," *Japarkulova*, 615 F.3d at 701 (quoting *Boykov v. INS*, 109 F.3d 413, 416 (7th Cir. 1997)).

"An applicant who establishes that she has suffered past persecution is presumed to have a well-founded fear of future persecution." *Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010). An applicant can, alternatively, establish "a well-founded fear of future persecution by showing that she has a genuine fear and that a reasonable person in her circumstances would fear persecution on account of a statutorily-protected ground if she returned to her native country." *Kante v. Holder*, 634 F.3d 321, 325 (6th Cir. 2011).

We have defined a "particular social group" as "a group of individuals who share a common, immutable characteristic that is one that members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences."

*Marikasi v. Lynch*, 840 F.3d 281, 290 (6th Cir. 2016). To qualify as a particular social group, the group "must be both particular and socially visible." *Bonilla-Morales*, 607 F.3d at 1137. "The essence of the particularity requirement . . . is whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Id.* (quoting *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009)). The group, moreover, "cannot be defined exclusively by the fact that its members have been subject to harm." *Kante*, 634 F.3d at 327 (internal quotation marks omitted). Social visibility, also referred to as social distinction, "requires that the shared characteristic 'generally be recognizable by others in the community.'" *Turcios-Flores v. Garland*, 67 F.4th 347, 354 (6th Cir. 2023) (quoting *Bonilla-Morales*, 607 F.3d at 1137).

When an asylum claim is based on alleged persecution by non-governmental actors, an applicant must also show that the persecutors are either aligned with the government or the government is "unwilling or unable to control" the alleged persecutors. *Juan Antonio*, 959 F.3d at 793. An applicant meets the "unwilling or unable" burden "when she shows that she cannot 'reasonably expect the assistance of the government' in controlling her perpetrator's actions." *Id.* (quoting *Al-Ghorbani*, 585 F.3d at 998). To determine if a government is unwilling or unable to control alleged persecutors, we look to both "the government's response to an asylum applicant's persecution and . . . general evidence of country conditions." *K.H. v. Barr*, 920 F.3d 470, 476 (6th Cir. 2019).

**1. Ability and Willingness of Government of Guatemala to Control Persecutors**

Mendez Lopez argues that the BIA erred in finding that the government of Guatemala is willing and able to protect her from persecution. The BIA found that she "did not demonstrate that

the Guatemalan government is unable or unwilling to protect her from the private actors she fears," because (1) Mendez Lopez "did not report any of her previous instances of harm to the police," and (2) Guatemala has "anti-gang efforts being put in place and police are otherwise endeavoring to fix the struggles with anti-gang violence and police corruption." A.R. at 5 (BIA Dec. at 3). Mendez Lopez, for her part, argues that (1) the BIA's reading of the Country Reports on Human Rights Practices ignores the fact that the anti-corruption efforts are largely unsuccessful, Pet'r Br. at 32, and (2) the BIA failed to consider that context when analyzing her failure to call the police, *id.* at 31.

It is true that "no government can protect its citizens from activities it is not made aware of," *Palucho v. Garland*, 49 F.4th 532, 541 (6th Cir. 2022) (internal quotation marks omitted), but an asylum applicant's failure to report past violence to the police does not automatically vitiate her claim that the government is unwilling or unable to protect her, *Juan Antonio*, 959 F.3d at 793; *Ortiz v. Garland*, 6 F.4th 685, 690 (6th Cir. 2021). If an applicant who failed to report past violence to the police can, for example, demonstrate that "legal remedies are generally unavailable" to people in her position, and that "'few [people in her position] report abuse to authorities[] because the judicial procedure is skewed against them," she can nonetheless show that the government is unwilling or unable to protect her. *Juan Antonio*, 959 F.3d at 793 (quoting *In re S-A-*, 22 I. & N. Dec. 1328 (B.I.A. 2000)). That said, here, Mendez Lopez made a bare assertion that the police "couldn't do anything" to protect her, A.R. at 330 (Sept. 2, 2020 Hr'g Tr. at 188), but provided no evidence as to why that belief was reasonable, *see Juan Antonio*, 959 F.3d at 793.

The Board, moreover, adopting the IJ's reasoning, considered country conditions data and noted that Guatemala has "anti-gang efforts being put in place and police are otherwise endeavoring

to fix the struggles with anti-gang violence and police corruption." A.R. at 5 (BIA Dec. at 3). *See also* A.R. at 84 (IJ Dec. at 23) (citing A.R. at 462–492 (Country Rep. on Hum. Rts. Pracs. 2011)). Mendez Lopez argues that "[t]he pages cited by the IJ do not support this claim." Pet'r Br. at 31. The IJ, however, cited pages of the Country Report on Human Rights Practices for 2011 that state that: "[c]ivilian authorities generally maintained effective control over the PNC [National Civilian Police]"; there are "anti[-]gang operations in some high-crime neighborhoods"; "[t]he ORP, which is the mechanism for investigating security force abuse, conducted internal investigations of misconduct by police officers"; and the police and army trained soldiers and cadets in human rights. A.R. at 467–68 (Country Rep. on Hum. Rts. Pracs. 2011 at 6–7). *See also* A.R. at 407–08 (Country Rep. on Hum. Rts. Pracs. 2017 at 6–7).[3] The BIA, accordingly, properly addressed both "the government's response" to Mendez Lopez's persecution and "general evidence of country conditions." *K.H.*, 920 F.3d at 476. Though portions of the country reports are troubling, the evidence does not compel a finding that the Guatemalan government is not willing or able to control Mendez Lopez's alleged persecutors. There is substantial evidence to support the Board's findings.

### 2. Mendez Lopez's Remaining Arguments

Mendez Lopez's remaining arguments cannot change the outcome in this case. In arguing that the Board's decision was not supported by substantial evidence, she argues that the Board erred in finding that she did not experience past persecution or a well-founded fear of future persecution;

---

[3]Mendez Lopez separately argues that the BIA improperly relied on the Country Report on Human Rights Practices for 2019 without identifying any specific page in the report that supports the Board's conclusion. Pet'r Br. at 32. The BIA, however, merely referenced the 2019 report "to bolster" its opinion, adopting instead the IJ's reasoning based on the 2011 and 2017 reports. A.R. at 5–6 (BIA Dec. at 3–4). The BIA, moreover, found that if the IJ's reliance on these earlier reports was in error, any such error was harmless. A.R. at 6 (BIA Dec. at 4). Mendez Lopez does not appeal the BIA's harmless-error finding, so we do not address it here.

that it erred in finding that her articulated particular social groups were not cognizable; and that it erred in finding that her persecution was not "on account of" her membership in her proffered particular social groups or political opinion. Because we conclude that Mendez Lopez has not put forth compelling evidence that Guatemala is unwilling or unable to control her persecutors, we need not review the Board's conclusions concerning whether the conduct she experienced amounted to past persecution, whether each of her proposed social groups was cognizable, nor whether her alleged persecution was "on account of" her membership in a proposed particular social group or her political opinions.

## C. Withholding of Removal

"[A]n applicant seeking withholding of removal faces 'a more stringent burden than what is required on a claim for asylum.'" *Urbina-Mejia v. Holder*, 597 F.3d 360, 365 (6th Cir. 2010) (quoting *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005)). Such an applicant must demonstrate "that there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005) (quoting *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004)). The applicant's protected grounds—their particular social group or political opinions, as relevant here—must be "a reason," though not necessarily "a central reason," for that persecution. *Guzman-Vazquez v. Barr*, 959 F.3d 253, 272 (6th Cir. 2020). Applicants also must show that the persecution will be inflicted "by the government, or persons the government is unwilling or unable to control." *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009) (quoting *Pilica*, 388 F.3d at 950).

### 1. Veronica Mendez Lopez

To qualify for withholding of removal, Mendez Lopez must demonstrate that the government of Guatemala is unwilling or unable to control her persecutors. The analysis underlying this prong of a withholding of removal claim mirrors the analysis of this prong of an asylum claim. *See Palucho*, 49 F.4th at 535–36. As demonstrated above, the Board relied on substantial evidence to find that the government of Guatemala is both willing and able to control Mendez Lopez's alleged persecutors. *See supra* Part II.B.1. Because she fails on this prong in the asylum context, Mendez Lopez's withholding of removal claim also fails on these grounds.

### 2. Juan Raymundo Ailon

The BIA found that Raymundo Ailon "did not establish the requisite nexus to a protected ground" to warrant withholding of removal. A.R. at 6 (BIA Dec. at 4). Specifically, the BIA explained that Raymundo Ailon "has not established clear error in the Immigration Judge's conclusion that [none of his] protected ground[s] is a reason he was, or will be, targeted by gangs." A.R. at 7 (BIA Dec. at 5).

Raymundo Ailon appeals the BIA's decision that he was not persecuted on account of (1) his membership in the particular social group "family members of [Mendez Lopez's father]," and (2) his political opinion of "opposition to membership in organized gang activity." Pet'r Br. at 34. Because the BIA adopted the IJ's reasoning on these points, A.R. at 7 (BIA Dec. at 5), we look to the IJ's reasoning.

As to family members of Mendez Lopez's father, the BIA "[a]ssum[ed] without deciding that . . . [Raymundo Ailon's] proffered particular social groups are cognizable," but found that he "did not establish the requisite nexus to a protected ground." A.R. at 6 (BIA Dec. at 4). The BIA

adopted the IJ's reasoning that Raymundo Ailon "failed to establish that any harm he has suffered or might suffer would be motivated in any part by his . . . membership in a particular social group if he were removed to Guatemala." A.R. at 88 (IJ Dec. at 27). Raymundo Ailon makes conclusory statements but presents no evidence that his alleged past or potential future persecution is on account of his membership in this social group. *See* Pet'r Br. at 33–34. "[M]otive [is] critical" to the question of whether alleged persecution is on account of membership in a particular social group. *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). A petitioner "must provide *some* evidence of [the persecutor's motive], direct or circumstantial." *Id.* (emphasis in original). Because Raymundo Ailon's evidence to the contrary is lacking—and certainly does not compel a contrary result—we will not disturb the agency's factual determination on this question.

As far as Raymundo Ailon's purported political opinion, the BIA's determination, adopting the IJ's reasoning, that there was no nexus between his political opinions and persecution he faced, is supported by substantial evidence. Raymundo Ailon presented no evidence that he was targeted based on his political opinion, and he "never testified to expressing his anti-gang sentiment to any of the gang members that attempted to recruit him." A.R. at 87 (IJ Dec. at 26). Raymundo Ailon presents only conclusory, bald statements—and no evidence—to the contrary. Pet'r Br. at 33–34. An applicant for withholding of removal must establish that a protected ground is "a reason" for his persecution. *Guzman-Vazquez*, 959 F.3d at 271 (quoting 8 U.S.C. § 1231(b)(3)(C)). Raymundo Ailon fails to do so. Substantial evidence, accordingly, supports the Board's determination that his alleged persecution was not on account of his political opinion.

### III. CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.