NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0469n.06

Case No. 25-3123

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| CARMEN ODALIS CABRERA-HERNANDEZ, | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| v. | ) | THE UNITED STATES BOARD OF |
| | ) | IMMIGRATION APPEALS |
| PAMELA BONDI, Attorney General, | ) | |
| Respondent. | ) | OPINION |
| | ) | |

Before: NALBANDIAN, MATHIS, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Carmen Cabrera-Hernandez seeks review of a Board of Immigration Appeals ("BIA") order affirming an Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We deny Cabrera-Hernandez's petition.

## BACKGROUND

### I.     Facts

On July 16, 2014, Honduran citizen Carmen Cabrera-Hernandez entered the United States unlawfully—without being admitted or paroled by an immigration officer—in violation of § 212(a)(6)(A)(i) of the Immigration and Nationality Act. 8 U.S.C. § 1182(a)(6)(A)(i). The Department of Homeland Security initiated removal proceedings against Cabrera-Hernandez, who appeared before an IJ and conceded her removability. But she applied for asylum, withholding of removal, and protection under the CAT as relief from removal.

On September 8, 2020, the IJ held a hearing to adjudicate Cabrera-Hernandez's applications. At the hearing, Cabrera-Hernandez testified that she had lived with her grandmother in Honduras, but fled to the United States when she was twelve years old after gang members twice threatened to kidnap her. The first incident happened in May 2014 when she and her friend Maria were walking home from school. Two gang members confronted them and threatened to kidnap them. So, Cabrera-Hernandez's uncle began to escort her to and from school. A week after the threat, Maria was kidnapped, only to be released when her parents paid a ransom. Soon after, in June 2014, on a day when her uncle was unable to take her to school, Cabrera-Hernandez was threatened again by the same gang members. She did not return to school after this incident and, the following month, fled Honduras with the help of a female acquaintance. Cabrera-Hernandez reunited with her parents in the United States in August 2014. She is now twenty-four years old.

Cabrera-Hernandez claims she would be kidnapped or murdered if returned to Honduras, and she does not believe the police will protect her. Just two months after she fled Honduras, her uncle was murdered—allegedly by gang members—and the police did not investigate his death. Cabrera-Hernandez also fears retaliation by the gang if she were to file a police report. Similarly, she does not believe that her grandmother and aunt—her only remaining family in Honduras—would be able to protect her.

The IJ denied Cabrera-Hernandez's applications. As for her asylum claim, the IJ concluded that her proposed particular social groups ("PSGs")—"Honduran women," "Honduran females between the ages of 5 and 21," and "Honduran females between the ages of 15 and 24"—were not legally cognizable. AR 105-06. Cabrera-Hernandez therefore failed to show that any persecution occurred or would occur on account of a protected class. And because the evidence did not prove

an asylum claim, it could not satisfy the more stringent standard of proof for withholding of removal. The IJ also denied CAT protection.

The BIA affirmed, discussing only the cognizability of Cabrera-Hernandez's proposed PSGs. This petition for review followed.

## ANALYSIS

### I. Standard of Review

This court has jurisdiction to review a final order of the BIA under 8 U.S.C. § 1252(a)(1). When, as here, the BIA "reviews the [IJ's] decision and issues a separate opinion, rather than summarily affirming the [IJ's] decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009), *abrogated on other grounds as recognized in Seldon v. Garland*, 120 F.4th 527, 531 (6th Cir. 2024). But where the BIA adopted the IJ's reasoning, "this court also reviews the [IJ's] decision." *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015). To reverse the BIA's factual determinations, this court "must find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. I.N.S.*, 970 F.2d 149, 152 (6th Cir. 1992). We review de novo the BIA's legal determinations, including the cognizability of a PSG. *Singh v. Rosen*, 984 F.3d 1142, 1148 (6th Cir. 2021).

### II. Asylum Claim

Applicants seeking asylum under the Immigration and Nationality Act must "meet the definition of 'refugee.'" *Umaña-Ramos v. Holder*, 724 F.3d 667, 670 (6th Cir. 2013) (citing 8 U.S.C. § 1158(b)). A refugee is a "person who is unable or unwilling to return to her home country because of past persecution or a well-founded fear of future prosecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010) (internal quotations omitted).

Cabrera-Hernandez claims she is eligible for asylum because of her membership in a cognizable PSG. She offers three related PSGs to support her asylum claim: "Honduran women," "Honduran females between the ages of 5 and 21," and "Honduran females between the ages of 15 and 24." CA6 R. 13, Pet'r Br., at 12.

### A. Particular Social Groups

A petitioner seeking asylum or withholding of removal via PSG membership must show that the group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014); *Umaña-Ramos*, 724 F.3d at 671. Because "[g]eneral conditions of rampant gang violence alone are insufficient to support a claim for asylum," *Umaña-Ramos*, 724 F.3d at 670, petitioners must demonstrate they are "targeted for abuse based on [their] membership in a protected category." *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007). Here, the IJ and BIA found that Cabrera-Hernandez's proposed PSGs of "Honduran women," "Honduran females between the ages of 5 and 21," and "Honduran females between the ages of 15 and 24," were not cognizable because they were not defined with particularity.

The particularity prong asks "whether the proposed group can accurately be described in a manner sufficiently distinct that the group would be recognized, in the society in question, as a discrete class of persons." *Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009). In other words, PSGs cannot be "amorphous, overbroad, diffuse, or subjective." *Matter of M-E-V-G-¸* 26 I. & N. Dec. at 239. A group is overbroad when it could include a "generalized" or "sweeping" portion of the population, because it means the group is not discrete. *Rreshpja v. Gonzales*, 420 F.3d 551, 554-55 (6th Cir. 2005).

Cabrera-Hernandez argues that her proposed PSGs—which ask whether the petitioner is a woman, whether she is Honduran, and whether she is between the ages of 15 and 24—satisfy the particularity requirement because they are "precise, clearly delineated, and identifiable." CA6 R. 13, Pet'r Br., at 37. But the particularity determination does not rest on descriptive clarity alone. Instead, the particularity question also hinges on the broadness and diversity of the PSG, and whether it is internally discrete. Indeed, this court has repeatedly rejected PSGs that sweep over large, diverse swaths of the population as insufficiently particular, even when the language describes them with specificity. *See, e.g.*, *Reyes Galeana v. Garland*, 94 F.4th 555, 558-59 (6th Cir. 2024) (finding "Mexican business owners" an insufficiently particular PSG because "there is virtually no unifying relationship or characteristic narrowing" the group); *Aguilar-Mejia v. Bondi*, No. 22-3365, 2025 WL 2337021, at *2 (6th Cir. Aug. 13, 2025) (explaining that "young male Guatemalans" and "[c]hild victims of gang recruitment and gang violence" are insufficiently particular PSGs because they "sweep[] in an indeterminate slice of Guatemalan youth"); *Rreshpja*, 420 F.3d at 555-56 (finding the proposed PSG of "young, attractive Albanian women who are forced into prostitution" too "generalized [and] sweeping" to create a cognizable PSG) (cleaned up). All three of Cabrera-Hernandez's proposed PSGs suffer from the same overbreadth problem.

Cabrera-Hernandez pushes back, citing decisions from our sister circuits that have sanctioned similar, sweeping PSGs. *See, e.g.*, *Perdomo v. Holder*, 611 F.3d 663, 669 (9th Cir. 2010) (finding that "Guatemalan women" was not necessarily an incognizable PSG and "reject[ing] the notion that a persecuted group may simply represent too large a portion of a population to allow its members to qualify for asylum."). As the government notes, however, she "does not meaningfully grapple with *this [c]ourt's* precedent." CA6 R. 17, Resp't Br., at 21-22. For example, in *Mohammed v. Gonzales*, the Ninth Circuit determined that "Somalian females"

- 5 -

was not an overbroad PSG where ninety-eight percent of Somalian women were subjected to female genital mutilation. 400 F.3d 785, 789, 797-98 (9th Cir. 2005). But this court later declined to endorse *Gonzales*'s reasoning, explaining that we "do not necessarily agree with the Ninth Circuit's determination that virtually all of the women in Somalia are entitled to asylum in the United States." *Rreshpja*, 420 F.3d at 555. And in the years since, our court—as described above—has declined to find such broad PSGs cognizable. *See Umaña-Ramos*, 724 F.3d at 674 (collecting cases).

Cabrera-Hernandez mistakenly states that our court has adopted what she refers to as the "gender plus one" rule. CA6 R. 13, Pet'r Br., at 21-22. Relying on *Bi Xia Qu v. Holder*, 618 F.3d 602, 607 (6th Cir. 2010), she portrays this rule as requiring only that the PSG be defined by gender and one other immutable trait to automatically qualify as particularized. But *Qu*'s reasoning is not as formulaic as Cabrera-Hernandez contends. The case merely recognized that gender and another trait *could* constitute a PSG. *See id.* Nothing in *Qu* suggested a departure from this court's prior rulings, such as *Rreshpja*.

The BIA's decision addressed the remaining PSG requirements of immutability and internal social distinctiveness only in a cursory fashion. AR at 4. But because a PSG is incognizable if it fails to meet even one of the three requirements (immutability, particularity, and social distinction), Cabrera-Hernandez's failure to show particularity is dispositive. Therefore, the BIA did not err in denying Cabrera-Hernandez's petition based on lack of a cognizable PSG.[1]

---

[1] Cabrera-Hernandez attaches fifty-four unpublished BIA cases to her brief that she claims support her PSG arguments. Throughout the brief, she references these fifty-four cases en masse, as support for diverse propositions, without specifying which cases support her points, or how. Where "issues are adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," we consider them forfeited and do not address them. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (cleaned up).

**B.     Cabrera-Hernandez's Other Arguments on Appeal**

Cabrera-Hernandez also disputes the IJ's determination that gang violence, rather than rampant femicide, catalyzed the violence she faced (the "nexus" determination).  CA6 R. 13, Pet'r Br., at 23-24.  She claims the BIA violated her due process rights by ignoring evidence in the record about the prevalence of femicide in Honduras and not addressing the IJ's conclusion that her case was "at its core—a gang case."  AR 106; CA6 R. 13, Pet'r Br., at 48-51.  But we "review the IJ's reasoning only to the extent the [BIA] adopted it."  *Turcios-Flores v. Garland*, 67 F.4th 347, 353 (6th Cir. 2023).  As such, "any issues the [BIA] did not address are not before the court." *Id.*  Because the BIA addressed only Cabrera-Hernandez's proposed PSGs—and the rejection of those PSGs is dispositive—we decline to address the IJ's "nexus" reasoning.

## CONCLUSION

For the foregoing reasons, we deny Cabrera-Hernandez's petition for review.